UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

NOV 1 3 2007
11-13-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Ms. Tatanina S. Evans
175 ogle Terrace
Akron, OH. 44311
(Name of the plaintiff or plaintiffs)

CIVIL ACTION

v.

United States Postal
195 Randal Rd
Elgin ill 60120
(Name of the defendant or defendants)

07cv6439
JUDGE ASPEN
MAG. JUDGE VALDEZ

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Ms. Tatanina S. Evans of the county of Summit in the state of Ohio.

3. The defendant is United States Postal Service, whose street address is 195 Randal Rd Elgin, ill (city) Elgin (county) Kane (state) ill (ZIP) 60120 (Defendant's telephone number) (847)-741-0725 or 847-

4. The plaintiff sought employment or was employed by the defendant at (street address) 195 Randall Rd (city) Elgin (county) Kane (state) ill (ZIP code) 60120

5. The plaintiff [*check one box*]
   (a) ☐ was denied employment by the defendant.
   (b) ☐ was hired and is still employed by the defendant.
   (c) ☑ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,
   (month) _April_, (day) _21_, (year) _2005_.

7.1 _(Choose paragraph 7.1 or 7.2, do not complete both.)_

   (a) The defendant is not a federal governmental agency, and the plaintiff  [check
       one box]   ☐ has not  ☐ has   filed a charge or charges against the defendant
asserting the acts of discrimination indicated in this complaint with any of the following
government agencies:

   (i)   ☑ the United States Equal Employment Opportunity Commission, on or about
         (month) _May_ (day) _____ (year) _2005_

   (ii)  ☐ the Illinois Department of Human Rights, on or about
         (month) _____ (day) _____ (year) _____.

   (b) If charges _were_ filed with an agency indicated above, a copy of the charge is

attached.  ☑ YES.   ☐ NO, **but plaintiff will file a copy of the charge within 14 days.**

It is the policy of both the Equal Employment Opportunity Commission and the Illinois
Department of Human Rights to cross-file with the other agency all charges received. The
plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and
    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the
    defendant asserting the acts of discrimination indicated in this court complaint.

        ☑   Yes (month) _May_ (day) _26_ (year) _2005_

        ☐   No, did not file Complaint of Employment Discrimination

   2.   The plaintiff received a Final Agency Decision on (month) _March_
        (day) _6_ (year) _2007_.

   c.   Attached is a copy of the

        a.   Complaint of Employment Discrimination,
             ☑ YES   ☐ NO, but a copy will be filed within 14 days.

        (ii) Final Agency Decision
             ☑ YES   ☐ NO, but a copy will be filed within 14 days.

8.   *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

   (a) ☐  the United States Equal Employment Opportunity Commission has not issued a

      *Notice of Right to Sue.*

   (b) ☐  the United States Equal Employment Opportunity Commission has issued a

      *Notice of Right to Sue*, which was received by the plaintiff on
      (month)_____ (day)_____ (year)_____ a copy of which *Notice*
      is attached to this complaint.

9.   The defendant discriminated against the plaintiff because of the plaintiff's [*check only
   those that apply*]:

   (a) ☐  Age (Age Discrimination Employment Act).
   (b) ☐  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).
   (c) ☐  Disability (Americans with Disabilities Act or Rehabilitation Act)
   (d) ☐  National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).
   (e) ☑  Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).
   (f) ☐  Religion (Title VII of the Civil Rights Act of 1964)
   (g) ☑  Sex (Title VII of the Civil Rights Act of 1964)

10.  If the defendant is a state, county, municipal (city, town or village) or other local
   governmental agency, plaintiff further alleges discrimination on the basis of race, color,
   or national origin (42 U.S.C. § 1983).

11.  Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII
   claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for
   42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117;
   for the Rehabilitation Act, 29 U.S.C. § 791.

12.  The defendant [*check only those that apply*]

   (a) ☐  failed to hire the plaintiff.
   (b) ☑  terminated the plaintiff's employment.
   (c) ☐  failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify): _____

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

_____

_____

_____

_____

_____

_____

14. [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ YES　　☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☑ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐     Direct the defendant to (specify): _____

_____

_____

_____

_____

(g) ☑     If available, grant the plaintiff appropriate injunctive relief, lost wages,
liquidated/double damages, front pay, compensatory damages, punitive damages,
prejudgment interest, post-judgment interest, and costs, including reasonable
attorney fees and expert witness fees.

(h) ☐     Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)     *Tatanina S. Evans*

(Plaintiff's name)
*Tatanina S. Evans*

(Plaintiff's street address)

*175 Ogle Terrace*

(City) *Akron*     (State) *OH*     (ZIP) *44311*

(Plaintiff's telephone number) (330) – *475-2911*

Date: *November 6, 2007*

## LOCAL RULES 5.2 — 5.4

### LR5.2.     Form of Papers Filed

(a)     PAPER AND FONT SIZE.  Each document filed shall be flat and unfolded on
opaque, unglazed, white paper approximately 8 ½ x 11 inches in size.  It shall be plainly
written, or typed, or printed, or prepared by means of a duplicating process, without erasures
or interlineations which materially deface it.  It shall be bound or secured on the top edge of
the document. Where the document is typed, line spacing will be at least 1½ lines.  Where it
is typed or printed, (1)     the size of the type in the body of the text shall be 12 points and
that in footnotes, no less than 11 points, and (2)     the margins, left-hand, right-hand, top, and
bottom, shall each be 1 inch.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Tatanena Evans,
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.

Request No. 0520070168

Appeal No. 01A63561

Agency No. 4J600011605

## DENIAL

Complainant timely requested reconsideration of the decision in *Tatanena Evans v. United States Postal Service*, EEOC Appeal No. 01A63561 (October 17, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A63561 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court.



 UNITED STATES POSTAL INSPECTION SERVICE

CHICAGO DIVISION

May 5, 2005
0281-1526525-ASLT (1)

Our Ref: KSO

Subject: ELGIN, IL: Investigation of the Conduct of Tatanina S. Evans, City Carrier.

## INVESTIGATIVE MEMORANDUM

1. This investigation began following allegations made by Carla Williams, City Carrier at the Elgin Postal Annex to Bruce Jelinek, Manager, Elgin Postal Annex on April 21, 2005.    The following is what Williams provided in a written statement to Jelinek (Exhibit 1):

> Williams stated that on April 20, 2005, she returned to the post office when she realized she still had the keys to her postal vehicle.   She was hanging up her keys when Tatanina Evans yelled out, "hey you put a scratch on my car", Williams denied scratching Evans car.   Williams stated Evans repeated this several times and said that if she (Williams) ever touched Evans car again she would slap her around.

> Williams stated that she was standing by Mr. Thallers office waiting to see him when Evans walked by and bumped Williams with her arm and continued towards the cage.

> Williams said Evans clocked out and before leaving said "and let that be a warning to you, that if you ever go near my car we'll just go out here and I'll slap you around" Williams said she told Evans three times not to threaten her before Mr. Thaller came out of his office.   Williams stated that Evans said good Mr. Thaller is out here and then repeated what she had just said to Williams.

2. Ryan Thaller, Supervisor, Customer Service provided Bruce Jelinek with a written statement containing the following (Exhibit 2):

> At approximately 4:45 pm he was in his office when he heard Carla Williams shout "Don't threaten me!" he walked out of his office and saw Carla Williams standing by the outgoing

CAROL STREAM DOMICILE
P O BOX 87937
CAROL STREAM IL 60188-7937
TELEPHONE: (630) 260-5677
FAX: (630) 260-5332

- 2 -

Elgin, Illinois                                    0281-1526525-ASLT (1)

> mail, again saying "Don't threaten me!" He turned and saw
> Tatanina Evans. Thaller stated that when Evans saw him she
> said "I ain't threatening you! Ryan can hear this. I'm telling
> you that if my car gets another mark, it's you and me outside.
> I'm gonna let this one slide though."

> Thaller stated that Evans then exited the building and he
> followed calling to her twice before she stopped. Thaller told
> Evans she cannot threaten people and asked if Evans
> understood. Thaller stated Evans said she understood.

3. On April 27, 2005, I interviewed Carla Williams and Ryan Thaller. Neither provided information not already in their written statements to Bruce Jelinek.

4. Sharlene Merwin, City Carrier, provided Bruce Jelinek with a written statement containing the following (**Exhibit 3**):

> On Wednesday April 20th at approximately 4:45 pm, Merwin
> heard a lady say to Carla Williams that Carla had put a dent in
> her car and that Carla said she had not. Merwin said the other
> lady said she would slap her across her face.

5. On April 27, 2005, I interviewed Sharlene Merwin, City Carrier. The Memorandum of Interview with Merwin is included as **Exhibit 4**. Merwin provided the following information in addition to the statement she provided to Bruce Jelinek:

> Merwin stated that she recognized the lady talking to Carla
> Williams but at the time did not know her name. Merwin later
> found out that her name was Tatanina Evans. Merwin stated
> Evans later apologized to her for her outburst. Merwin
> observed no physical contact between Evans and Williams.

6. Kim Ranney, City Carrier, provided Bruce Jelinek with a written statement containing the following (**Exhibit 5**):

> On Wednesday April 20th, Ranney heard Tatanina Evans say to
> Carla Williams that Carla had marked her car. Ranney heard
> Evans state if Carla marked her car again she'd slap her.

7. On April 28, 2005, I interviewed Kim Ranney, City Carrier. The Memorandum of Interview with Ranney is included as **Exhibit 6**. Ranney provided the following information in addition to the statement she provided to Bruce Jelinek:

- 3 -

Elgin, Illinois                                              0281-1526525-ASLT (1)

> Ranney stated she heard Williams telling Evans to quit threatening her. Evans apologized to Ranney. Ranney observed no physical contact between Evans and Williams.

8. On May 3, 2005, Tatanina Evans provided a written statement signed and sworn to Inspector Niko and myself, in the presence of her union rep Michael Losurdo. Evans sworn statement is provided as **Exhibit 7.** Evans provided the following information in her written statement.

> Evans stated she was sitting in her car at 7:15 am when Carla Williams backed her vehicle into the parking space next to her. Evans rolled down her drivers side window a tapped on Williams driver side window. Evans stated she told Williams she was parked pretty close. Evans stated Williams suggested she move her car over or park somewhere else. Evans said she did not reply to Williams and went into the Post Office.

> After carrying her route Evans returned to the Post Office a 4:45 pm and noticed a scratch on her car. Evans went into the Post Office to put away her mail and accountables and saw Carla Williams talking to Kim Ranney. Evans stated she approached Williams and asked Williams why did you scratch my car? Evans stated Williams replied that she did not scratch Evans car.

> Evans said she asked Williams, "would I be wrong if I slap your ass in your face like you scratched my car?" Evans said Williams replied, "Are you threatening me?"

> Evans stated she tossed her outgoing mail in the gurney and proceeded to put her accountables away. Evans said Williams was standing across from the supervisors office and Evans told Williams, I don't have time, but the next time she needs to be more careful or I will kick her ass. Evans stated Williams repeated, are you threatening me? Evans said Ryan came out of his office as Evans said I will kick your ass.

> Evans stated she walked out of the office with Ryan telling her she can't threaten people.

- 4 -

Elgin, Illinois                                    0281-1526525-ASLT (1)

9. On May 3, 2005, Inspector Niko and I interviewed Tatanina Evans, City
   Carrier. The Memorandum of Interview with Evans is included as **Exhibit 8.**
   Evans provided the following information not provided in her written
   statement.

> Evans stated she apologized to Sharlene Merwin and Kim
> Ranney.  Evans stated she never had any physical contact with
> Carla Williams.

*Kevin O'Brien*

Kevin S. O'Brien
Postal Inspector
Chicago Division

Attachments:        Described Exhibits

- 5 -

Exhibits:

1. Photocopy, Statement of Carla Williams provided to Bruce Jelinek, Manager Elgin Postal Annex.

2. Photocopy, Statement of Ryan Thaller, Supervisor, provided to Bruce Jelinek, Manager, Elgin Postal Annex.

3. Photocopy, Statement of Sharlene Merwin provided to Bruce Jelinek, Manager, Elgin Postal Annex.

4. Photocopy, Memorandum of Interview of Sharlene Merwin, conducted on April 27, 2005.

5. Photocopy, Statement of Kimberly Ranney provided to Bruce Jelinek, Manager, Elgin Postal Annex.

6. Photocopy, Memorandum of Interview of Kimberly Ranney, conducted on April 28, 2005.

7. Photocopy, Statement of Tatanina Evans provided to Inspectors Niko and O'Brien on May 3, 2005.

8. Photocopy, Memorandum of Interview of Tatanina Evans conducted on May 3, 2005.

# NOTES CONCERNING INTERACTION WITNESSED BETWEEN C. WILLIAMS & T. EVANS ON 04-20-05 AT THE ELGIN ANNEX 60123.

The time was approximately 4:55 p.m.

I was in my office concluding a 60 day review with probationary PTF employee Mary Deegan when I heard Carla Williams repeatedly shout, "Don't threaten me!" I walked out of my office to see what the problem was. Carla Williams was standing leaning up against the gaylord of outgoing mail about 10 feet in front of my office looking at the employee door to the west of my office door, again saying "Don't threaten me!". I turned to my right and saw Tatanina Evans, with one hand on the door handle, looking toward Carla Williams. Both Williams and Evans were off the clock. Williams had returned because she had inadvertently taken keys home, Evans had just punched out and was at the door, about to leave.

When Evans saw me she stated to Williams (to the best of my recollection) "I ain't threatening you! (pointed to me in my door way) Ryan can hear this. I'm telling you that if my car gets another mark, it's you and me outside. I'm gonna let this one slide though."

Evans then turned around and walked out the door. I caught up with her outside. I called her name 2x and she ignored me and kept walking. Finally I said, "Tatanina, I know you can hear me. Stop." I told Evans (based on what I had just heard) that she cannot threaten people. I asked her if she understood what I had just said. She stated she understood. She did not object to my classification of her statement as a threat, nor did she deny she had made any threats.

I asked Evans how she knew that Williams had hit her personal vehicle. Evans responded by stating, "It's a mark high enough that a van had to make. (points to a green van license # 56374 in route 2358's parking spot and continues) "this shit is hers (William's)"
I said to Evans, "Did you see Carla hit your car?"
Evans, "No, but my car is new......
Thaller, "What color is your car?"
Evans, "Gold, and the mark is high like from a van."
Evans turned and walked away.

I entered the Annex. Carla Williams was still leaning against the gaylord. It was approximately 5 p.m. I asked Williams, "Did you scratch Tatanina Evans's gold car?"
Williams: "No."

I asked Williams to describe how this entire situation had unfolded because I got involved after things had obviously escalated. Williams told me that in the morning, as the carriers were arriving, Evans had pulled in to a parking spot first, with Williams arriving shortly thereafter. Williams told me Evans's car was parked on the line.

Williams told me that she asked Evans to move her car and that Evans said "No." Subsequently Williams had to exit her vehicle via the passenger door because she was too close to Evans's car. When she went home for the day, Williams told me that she also had to enter her vehicle via the passenger side due to her vehicle and the car of Evans being so close together.

I asked Williams for a statement. She seemed visibly shaken and I recall she asked me how to spell five different, very common words. I was surprised that she was having trouble with the statement. I asked her if she was upset. She responded that she was scared, worried that Evans would confront her. Her exact statement was that she feared Evans might "pull a knife on her" if they were alone outside.

Ryan Thaller
Supervisor, Customer Service
Elgin IL 60123
04-20-05

*my
11 of 17*

## MEMORANDUM OF INTERVIEW

CASE NUMBER              :        0281-1526525-ASLT (1)

PERSON INTERVIEWED       :        Sharlene Merwin

PLACE OF INTERVIEW       :        195 S. Randall Road
                                  Elgin, IL

DATE OF INTERVIEW        :        April 27, 2005

INTERVIEWED BY           :        Kevin O'Brien

---

On April 27, 2005, I interviewed Sharlene Merwin, City Carrier Elgin Postal Annex in regards to the April 20th altercation between carriers Carla Williams and Tatanina Evans. Merwin provided the following information:

Merwin stated she was at her case at about 4:45 pm when she heard arguing about a scratch on a car. Merwin said Evans accused Williams of scratching her car and that Williams denied scratching Evans car. Merwin stated she heard Evans say "I'm going to slap you across your face"

Merwin was asked why she didn't refer to Evans in her written statement. Merwin stated she recognized the carrier but at the time did not know her name. Merwin said she later found out the carriers name was Tatanina Evans.

Merwin stated that Evans apologized to her and said she was sick of all these bitches in here.

Merwin stated she never saw any physical contact between Carla Williams and Tatanina Evans.

*Kevin O'Brien*

Kevin S. O'Brien
Postal Inspector

EXHIBIT No. 4

MEMORANDUM OF INTERVIEW


CASE NUMBER            :        0281-1526525-ASLT (1)

PERSON INTERVIEWED     :        Kimberly Ranney

PLACE OF INTERVIEW     :        195 S. Randall Road
                                Elgin, IL

DATE OF INTERVIEW      :        April 27, 2005

INTERVIEWED BY         :        Kevin O'Brien

---

On April 28, 2005, I interviewed Kimberly Ranney, City Carrier Elgin Postal Annex in regards to the April 20th altercation between carriers Carla Williams and Tatanina Evans. Ranney provided the following information:

Ranney stated that Carla Williams was hanging up her postal vehicle keys when she heard Tatanina Evans yelling at Williams that Williams had put a mark on her car. Ranney said Williams denied marking Evans car.

Ranney stated she left to unload her CRV. Ranney said when she returned Evans apologized to her saying "I'm sorry Kim, I'm tired of all these bitches I just want to slap them.".

Ranney later heard Evans tell Williams that if it happened she would slap Williams.

Ranney stated she never saw any physical contact between Carla Williams and Tatanina Evans.


Kevin S. O'Brien
Postal Inspector

EXHIBIT No. 6

## MEMORANDUM OF INTERVIEW

CASE NUMBER              :       0281-1526525-ASLT (1)

PERSON INTERVIEWED       :       Tatanina Evans

PLACE OF INTERVIEW       :       195 S. Randall Road
                                 Elgin, IL

DATE OF INTERVIEW        :       April 27, 2005

INTERVIEWED BY           :       Kevin O'Brien

On May 3, 2005, Inspector Niko and I interviewed Tatanina Evans, City Carrier Elgin Postal Annex in regards to the April 20th altercation between carriers Carla Williams and Tatanina Evans. Evans was accompanied by her Union representative Michael Losurdo. Evans provided the following information:

Evans stated that she was parked in her car at 7:15 am having a cup of coffee when Carla Williams backed into the space next to her. Evans rolled down her window and tapped on Carla Williams' driver side window telling Williams that she was too close. Evans said Williams suggested that Evans back up and mover over or find another space. Evans said she squeezed out of her car but did not say anything. Evans stated she went inside and punched in.

Evans stated she returned to the office a 4:45 pm and noticed a mark on her car and that Williams vehicle was gone. Evans said she went into the office and back to her case. Evans said she then saw Williams talking to Kim Ranney. Evans stated she asked Williams why she hit her car. Evans stated that Williams denied hitting Evans car. Evans stated to Williams "would I be wrong if I slapped your face like you scratched my car"

Evans stated Williams was standing by the outgoing mail gurney and that she (Evans) threw her mail into the gurney and continued to the cage to return her accountables. Evans stated she made no contact with Williams.

Evans said she punched out and before she left told Williams that you need to be more careful where you park your car. Evans stated she told Williams the next time be more careful because I will would beat your ass about my shit.  Evans stated that Ryan Thaller came out of his office when she made the last comment.

EXHIBIT No. 8

my
17 of 17

-2-

Evans stated she walked out of the office with Thaller calling after her.  Evans said Thaller told her she couldn't threaten people like that.  Evans stated she understood and told Thaller that she was upset about her car and that she and Williams had words that morning.  Evans stated Thaller asked her what color her car was, she replied gold and that Thaller then went back inside.

Evans stated that she apologized to Sharlene Merwin and Kim Ranney.

Kevin S. O'Brien
Postal Inspector

EXHIBIT No. 8



National EEO Services Offi
**UNITED STATES**
**POSTAL SERVICE**

NOV   9  2005

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

Tatanina S Evans                          )
2939 Shelly Lane                          )
Aurora          IL    60504-5892  )
Complainant                               )   Delivery Confirmation Representative   0303 3430 0002 5548 0130
                                          )   Delivery Confirmation Complainant      0303 3430 0002 5548 0147
v.                                        )
John E. Potter                            )
Postmaster General                        )
Respondent                                )      **Agency Case Number: 4J-600-0116-05**
Agency                                    )
                                              **Date Formal Filed:**     **August 13, 2005**

### TRANSMITTAL OF INVESTIGATIVE FILE

In accordance with Title 29, Code of Federal Regulations, Part 108(f) and (g), this is notification that the Postal Service has completed the investigation of the formal complaint of discrimination referenced above. Enclosed is a copy of the report of that investigation. At this time you have the right to do either of two things:

Request a hearing before an Administrative Judge appointed by the Equal Employment Opportunity Commission within thirty (30) calendar days of the date on which this notice is received, OR

Request a final agency decision without a hearing.

For more information on the two available options, refer below to Explanation of Options. If you fail affirmatively to make a choice between the two options, the Postal Service will issue a final agency decision. Should a decision to not pursue this complaint be made, please sign and date the enclosed PS Form 2564-C and return it to:

Manager, EEO Compliance and Appeal
Great Lakes Area
244 Knollwood Drive 2nd Floor
Bloomingdale      IL   60117-3010

NOTE: If you are represented by an attorney, all time frames are calculated from the date on which the attorney receives the applicable document; e.g. this notice.

### EXPLANATION OF OPTIONS

To request a hearing before an Administrative Judge appointed by the Equal Employment Opportunity Commission, you must write to the District Office of the Equal Employment Opportunity Commission at the address shown below within thirty (30) calendar days of the date in which you received this notice. Enclosed is a form which the Commission has suggested for requesting a hearing. The address to which to send your request for a hearing is on the next page.

PO Box 21979
Tampa FL  33622-1979
Tel. (813) 739- 2040
FAX (202) 406-4532



Tatanina S Evans
4J-600-0116-05
Pg. 2

Chicago District Office
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
500 W Madison St #2800
Chicago                    IL    60661-2511

You must provide the Manager, EEO Compliance and Appeals, (address below) with a copy of your request for a hearing in accordance with Equal Employment Opportunity Commission regulations. Upon receipt of a copy of your request, the Manager will send the investigative report to the Equal Employment Opportunity Commission.

Following the hearing, the Administrative Judge will issue a decision containing findings of fact and conclusions of law to the Postal Service for consideration and issuance of its final action. Title 29, Code of Federal Regulations, Part 1614.109(g)(3) also permit the Administrative Judge to issue a decision without holding a hearing or to make such other rulings as are appropriate. The Postal Service has forty (40) days from the date of its receipt of the decision of the Administrative Judge and the associated hearing record, if applicable, within which to decide whether or not to implement the decision. If the Postal Service decides not to implement the decision, it must file an appeal with the Office of Federal Operations of the Equal Employment Opportunity Commission. You will receive a copy of that appeal and any supporting brief and you may file your own response or brief.

If you wish to request a final agency decision without a hearing, you should direct your written request to the address shown below within thirty (30) calendar days of the date in which you received this notification. The address to which you should send your request is:

Manager, EEO Compliance and Appeals
Great Lakes Area
244 Knollwood Drive 2nd Floor
Bloomingdale              IL    60117-3010

If you are dissatisfied with the Postal Service's final agency decision or final action implementing a decision of an Administrative Judge, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of the date in which you received the decision or final action. Should you choose to file a civil action, you should name the head of the agency, in this case the Postmaster General, as the defendant. In the alternative, you may file an appeal with the Office of Federal Operations of the Equal Employment Opportunity Commission within thirty (30) calendar days of the date in which you received the decision or final action.

Stephanie D. Darnaby
EEO Services Analyst

cc: Anita Hatcher, Representative, 211 N. Kaspar Avenue, #104 Arlington Heights, IL 60005-1270
    Manager, EEO Compliance and Appeals, Great Lakes Area

Enclosures: Report of Investigation
            PS Form 2564C, Withdrawal Form
            Request for Hearing Form

 **UNITED STATES POSTAL SERVICE®**



## EEO Investigation Report

NOTICE OF RESTRICTED USAGE
Access to. and usage of, this EEO complaint file is RESTRICTED by both the Freedom of Information Act and the Privacy Act to: (1) the complaint (and his or her representative) and (2) government officials who must have access to the files to discharge their OFFICIAL duties. The file and its contents must be safeguarded. Willful violations of these requirements are subject to criminal penalties (5 U.S.C. 552a(i)(1)).

| Processing Office | Case No. | Date Filed |
|---|---|---|
| National EEO Investigative Services Office | 4J-600-0116-05 | 08/13/2005 |

| Complainant Name | Position Title |
|---|---|
| Tatanina S. Evans | Former City Carrier |

| Address of Complainant | Name of Complainant's Supervisor |
|---|---|
| 2939 Shelly Lane | Ryan H. Thaller |
| Aurora, IL 60504-5892 | Telephone No. / Email Address |
|  | (847) 695-1254 / Ryan.H.Thaller@usps.gov |

| Telephone No. | Email Address | Preference Eligible (yes or no) | Mixed Case (yes or no) |
|---|---|---|---|
| (630) 259-3646 | None | No | No |

| Complainant's Postal Facility | Responding Postal Facility |
|---|---|
| Elgin Carrier Annex | Elgin Carrier Annex |

| Responding Postal Manager's Name | Responding Postal Manager's Address |
|---|---|
| Bruce D. Jelinek | 195 S. Randall Road |

| Telephone No. | Email Address | |
|---|---|---|
| (847) 695-1254 | Bruce.D.Jelinek@usps.gov | Elgin, IL 60123-5559 |

## Type of Complaint

| Race | Color | Religion | Sex | National Origin | Age (Date of Birth) |
|---|---|---|---|---|---|
| African-American | Black | N/A | Female | N/A | N/A |

| Physical Disability | Mental Disability |
|---|---|
| N/A | N/A |

| Retaliation Based on Previous Activity (Cited Dates and Case Nos.) | | | |
|---|---|---|---|
| 1. Date: 12/03/2003 | Case No: 4J-600-0044-04 | 2. Date: N/A | Case No: N/A |

Claim(s):

Complainant alleges discrimination based on race (African-American), color (Black), sex (Female), and retaliation (Prior EEO Activity), when: 1) on April 21, 2005, she was placed in an Emergency Placement in an Off Duty Status without pay; and 2) she was issued a Notice of Removal dated May 26, 2005 for improper conduct.

As a remedy to this complaint, Complainant is seeking $500,000 for having a hate crime committed against her, $300,000 for having undue stress placed on her, full back pay, and to be reimbursed for all financial loss incurred.

| Complainant's Representative Name | Title |
|---|---|
| Anita Hatcher | Non-Attorney Representative |

| Address of Representative | |
|---|---|
| 211 N. Kaspar Avenue, Apartment #104, Arlington Heights, IL 60005-1270 | |

| Investigator's Name (Print or Type) | Office Telephone No. | Email Address |
|---|---|---|
| Adam M. Jurach, Esq. | (804) 740-3258 | Juracha@comcast.net |

| Postal Address of Investigator | Postal Address of Area Manager of EEO Compliance and Appeals |
|---|---|
| P.O. Box 29070 | Great Lakes Area Office |
| Richmond, VA 23242-0070 | 244 Knollwood Drive, 2nd Floor |
|  | Bloomingdale, IL 60117-3010 |

| Investigator's Signature | Date Report Completed | Investigator No. |
|---|---|---|
| Adam M. Jurach | 11/02/2005 | 7247 |

PS Form 2430, March 2001

## TITLE PAGE

| | |
|---|---|
| TATANINA S. EVANS<br>2939 Shelly Lane<br>Aurora, IL 60504-5892 | )<br>)<br>)<br>) |
| **Complainant** | )<br>) |
| v. | )<br>) |
| JOHN E. POTTER<br>Postmaster General<br>United States Postal Service<br>c/o Great Lakes Area<br>Bloomingdale, IL 60117-3010 | )<br>)<br>)<br>)<br>)<br>) |
| **Agency** | )<br>) |

**AGENCY CASE NO.**
**4J-600-0116-05**

**DATE FORMAL FILED:**
**August 13, 2005**

## INVESTIGATIVE REPORT

This investigative report was prepared by the undersigned investigator and submitted to the agency on this, the 2nd day of November 2005.

*[signature]*

Adam M. Jurach, Esq.
USPS EEO Contract Investigator
P.O. Box 29070
Richmond, VA 23242-0070

**Access to, and usage of, this EEO complaint file is RESTRICTED by both the Freedom of Information Act and the Privacy Act to: (1) the complainant (and his or her representative), and (2) government officials who must have access to the files to discharge their OFFICIAL duties. This file and its contents must be safeguarded. Willful violations of these requirements are subject to criminal penalties (5 U.S.C. 552a(i)).**

TATANINA S. EVA●                                        4J-600-0116-05

# INDEX AND EXHIBITS

## DOCUMENT                                              PAGE #

Index of File                                             2

List of Affidavits                                        2

List of Exhibits                                          3-4

Investigative Summary                                    5-15

## AFFIDAVITS:

A.    Tatanina S. Evans                   City Carrier, Q-01 (Former)
      Complainant                         Elgin Carrier Annex
      Race: African American              U.S. Postal Service
      Color: Black                        195 S. Randall Road
      Sex: Female                         Elgin, IL  60123-5559
      Retaliation: Prior EEO Activity

B.    Bruce D. Jelinek                    Manager- Cust. Service, EAS-21
      RMO                                 Elgin Carrier Annex
      Race: Caucasian                     U.S. Postal Service
      Color: White                        195 S. Randall Road
      Sex: Male                           Elgin, IL  60123-5559

C.    Ryan H. Thaller                     Supervisor- Cust. Service, EAS-17
      RMO                                 Elgin Carrier Annex
      Race: Caucasian                     U.S. Postal Service
      Color: White                        195 S. Randall Road
      Sex: Male                           Elgin, IL  60123-5559

D.    Diane K. Tindle                     Postmaster, EAS-22
      RMO                                 Elgin Main Post Office
      Race: Caucasian                     U.S. Postal Service
      Color: White                        68 Grove Court
      Sex: Female                         Elgin, IL  60120-9998

TATANINA S. EVA                              4J-600-0116-05

## EXHIBITS:

|     |                                                                                                                                                                                              | # of Pages |
|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------|
| 1.  | PS Form 50 for Complainant, dated September 7, 2005                                                                                                                                           | 1          |
| 2.  | iComplaints Report for Complainant                                                                                                                                                            | 1          |
| 3.  | Complainant's prior EEO activity shown on PS Form 2564-A, Information for Pre-Complaint Counseling, dated December 12, 2005                                                                    | 3          |
| 4.  | Emergency Placement in Off-Duty Status issued to Complainant by Manager Bruce Jelinek, dated April 21, 2005                                                                                    | 1          |
| 5.  | Investigative Memorandum regarding Complainant's alleged improper conduct, dated May 5, 2005                                                                                                   | 19         |
| 6.  | Notice of Removal issued to Complainant by Supervisor Ryan Thaller, dated May 26, 2005                                                                                                        | 2          |
| 7.  | Elgin Annex Daily Safety Message Log for April, 2004, OSHA Fact Sheet regarding workplace violence, and Attendance Sheet for a safety talk given on February 14, 2002                          | 4          |
| 8.  | Complainant's Step A Grievance, dated August 16, 2005, and Step B Decision, dated September 6, 2005                                                                                            | 4          |
| 9.  | Notices of Removal issued to Jerome Qualkenbush, dated April 23, 2004, Desi Martin, dated March 25, 2005, Mark Kamradt, dated February 14, 2002, and Mathew Garner, dated September 3, 2002    | 8          |
| 10. | PS Forms 50 for comparator employees                                                                                                                                                          | 10         |
| 11. | Agreement between the National Association of Letter Carriers and the United States Postal Service, AFL-CIO, 2001-2006, Article 3, Management Rights                                           | 2          |
| 12. | Agreement between the National Association of Letter Carriers and the United States Postal Service, AFL-CIO, 2001-2006, Article 16, Discipline Procedure, Section 4, Suspensions of 14 Days or Less | 2      |
| 13. | Agreement between the National Association of Letter Carriers and the United States Postal Service, AFL-CIO, 2001-2006, Article 16, Discipline Procedure, Section 7, Emergency Procedure        | 3          |

TATANINA S. EVANS                                          4J-600-0116-05

14.   Employee and Labor Relations Manual 17.10, dated May 26, 2005,      2
      Section 665.16, Behavior and Personal Habits

15.   Employee and Labor Relations Manual 17.10, dated May 26, 2005,      1
      Section 665.24, Violent and/or Threatening Behavior

16.   Postal Bulletin 21811, Joint Statement on Violence and Behavior in   1
      the Workplace, dated March 19, 1992

C-17. Complainant's Discharge Instructions from the Emergency Department   1
      at Rush-Copley Medical Center, dated August 17, 2005

C-18. Complainant's prescription forms filled out by Dr. Timothy P. Coggin,  5
      not dated

TATANINA S. EVAN                                    4J-600-0116-05

# INVESTIGATIVE SUMMARY

**Statement of claims and issues to be investigated:** Complainant alleges discrimination based on race (African-American), color (Black), sex (Female), and retaliation (Prior EEO Activity), when: 1) on April 21, 2005, she was placed in an Emergency Placement in an Off Duty Status without pay; and 2) she was issued a Notice of Removal dated May 26, 2005 for improper conduct.

As a remedy to this complaint, Complainant is seeking $500,000 for having a hate crime committed against her, $300,000 for having undue stress placed on her, full back pay, and to be reimbursed for all financial loss incurred.

**Affidavit Testimony:**

## For Race, Color, and Sex Purviews:

Complainant states she was formerly a City Carrier, Q-01, at the Elgin Carrier Annex, in Elgin, Illinois. She testifies her race is African American, her color is black, and her sex is female. Complainant adds the management officials became aware of her race, sex, and color when they first saw her. [Affidavit A]

Bruce D. Jelinek testifies he is the Manager of Customer Service, EAS-21, at the Elgin Carrier Annex, in Elgin, Illinois. Mr. Jelinek adds his race is Caucasian, his color is white, and his sex is male. He states he became aware of Complainant's race, sex, and color when he met her in June of 1999. [Affidavit B]

Ryan H. Thaller states he is the Supervisor of Customer Service, EAS-17, at the Elgin Carrier Annex, in Elgin, Illinois. Mr. Thaller adds his race is Caucasian, his color is white, and his sex is male. He testifies he was aware of Complainant's race, sex, and color. Mr. Thaller explains he cannot recall how he became aware of Complainant's race, sex, and color, but believes either someone told him when she was hired or he became aware when he first met her. [Affidavit C]

Diane K. Tindle states she is the Postmaster, EAS-22, at the Elgin Mail Post Office, in Elgin, Illinois. Ms. Tindle testifies her race is Caucasian, her color is white, and her sex is female. [Affidavit D]

## For Retaliation Purview:

When asked to identify what prior EEO activity Complainant was involved in, she replied "A group discrimination EEO." When asked to identify the case number(s) and date(s) of the prior EEO activity, she responded "Information unknown at this time." Complainant states she is unaware of whether the management officials were aware of her prior EEO activity. [Affidavit A]

TATANINA S. EVAN  4J-600-0116-05

Mr. Jelinek states he is not aware of Complainant's prior EEO activity. [Affidavit B]

Mr. Thaller states he is not aware of Complainant's prior EEO activity. [Affidavit C]

### Issue 1:  Placed In Emergency Placement Off Duty Status (Race, Color, Sex, and Retaliation Allegations):

Complainant states Postmaster Diane Tindle, Manager of Customer Service Bruce Jelinek, and Supervisor of Customer Service Brilan [Ryan] Thaller discriminated against her when she was placed in an Emergency Placement Off Duty Status on April 21, 2005. She explains she was placed in the Emergency Placement Off Duty Status for allegedly threatening and assaulting a fellow employee. Complainant testifies Postmaster Tindle discriminated against her when she refused to talk to her when she called Ms. Tindle about the incident. Complainant explains Manager Jelinek discriminated against her when he placed her in the Emergency Placement Off Duty Status without hearing her side of the story. She adds Mr. Jelinek made the decision based on what Carrier Carla Williams and Supervisor Thaller told him. Complainant states Ryan Thaller discriminated against her by not investigating what actually happened. She adds Mr. Thaller only investigated and believed what Carla Williams told him. Complainant testifies Supervisor Thaller did not investigate the part of the story where Ms. Williams initiated the situation by scratching her car. [Affidavit A]

When asked to indicate why she believes she should not have been placed in an Emergency Placement Off Duty Status, she responded "Other white employees such as Lane Linberg, Jerry Kloczkowski, Larry McConnell, Jeff Mette, Brian Riley, Jerry Quackenbush, Jeff Fullman, and more." Complainant states her race and color were factors when she was placed in an Emergency Placement Off Duty Status because all of the management officials are white, and Carla Williams, who is white, committed the hate crime and instigated the situation and was never issued disciplinary action. She testifies her sex was a factor because all of the officials that issued the discipline are males and she is female. Complainant adds her prior EEO activity was a factor because all the white officials involved issued her, a black female, discipline, yet at the same time protected a white female employee who committed a hate crime against her by scratching her car. [Affidavit A]

Complainant states the following employees have engaged in improper conduct and not been issued disciplinary action: Lane Linberg (White, Male), Jerry Kloczkowski (White, Male), Larry McConnell (White, Male), Jeff Mette (White, Male), Brian Riley (White, Male), Jerry Quackenbush (White, Male), and Jeff Fullman (White, Male). She adds she is not aware of any other employees that have been issued disciplinary action for engaging in improper conduct. Complainant states she has suffered the following loss and harm as the result of being placed in an Emergency Placement Off Duty Status: she has no insurance benefits, no medical treatment, no income, has been denied unemployment benefits, cannot send her small children to day care, is in the process of being evicted, is in the process of having her car repossessed, has no food, poor health, hair loss, and a tremendous amount of stress that has led to major depression. When

TATANINA S. EVAN                                      4J-600-0116-05

asked if Complainant filed a grievance regarding this issue, she responded "See attached". [Affidavit A]

Mr. Jelinek testifies he was Complainant's second level supervisor. He explains it was brought to his attention that Complainant had threatened and assaulted a fellow employee on April 21, 2005. Mr. Jelinek states as soon as he found out about the incident. he questioned the employee witnesses. Mr. Jelinek testifies he discovered that Complainant had given another employee an intimidating bump with her elbow which means there was a physical confrontation in the facility. He adds Complainant had threatened the other employee by telling her she would beat her up in the parking lot. Mr. Jelinek states Complainant admitted the confrontation to him as well as to the Postal Inspectors. He explains because the Postal Service has a zero tolerance policy on violence in workplace, he placed Complainant in the Emergency Placement in an Off Duty Status. Mr. Jelinek states he cannot recall Complainant being given any written or verbal warnings, or counseled for improper conduct. He testifies he relied on the policies found in the Employee and Labor Relations Manual, the National Agreement, and the Joint Statement on Violence in the Workplace. [Affidavit B]

Mr. Jelinek testifies Complainant's race, sex, color, and prior EEO activity were not factors when he placed her in an Emergency Placement Off Duty Status. He states Mr. Linberg (Male, Caucasian, White) and Mr. Kloczkowski (Male, Caucasian, White) had gotten into a verbal confrontation. Mr. Jelinek explains the Union, Mr. Lindberg, Mr. Kloczkowski, representatives for Mr. Linberg and Mr. Kloczkowski, and management officials held a meeting to discuss the incident. Mr. Jelinek explains during the meeting, it was determined that these two men had engaged in a verbal confrontation, but that there were no verbal threats or physical contact. Mr. Jelinek states therefore, these employees were not issued discipline or placed in an Emergency Placement Off Duty Status. He explains the incident involving Mr. Linberg and Mr. Kloczkowski was not similar in nature to the one Complainant engaged in. Mr. Jelinek testifies in Complainant's case, there were threats of violence as well as physical contact. He adds he is not aware of Larry McConnell, Jeff Mette, Brian Riley, Jerry Quackenbush, or Jeff Fullman engaging in physical violence or threatening fellow employees. Mr. Jelinek states he has not disciplined any other employees for violence in the past few years. He testifies no employees have engaged in improper conduct and not been issued disciplinary action. Mr. Jelinek adds Complainant's grievance was denied. [Affidavit B]

Mr. Thaller states he was one of Complainant's primary supervisors during May and June 2005. He adds he had no involvement in the decision to place Complainant in an Emergency Placement off Duty status. [Affidavit C]

Ms. Tindle testifies she had no direct work relationship with Complainant. Ms. Tindle states she did not have any involvement with the decision to issue Complainant the Emergency Placement. She adds she supported Bruce Jelinek's decision to issue the Emergency Placement because the Postal Service has a zero tolerance policy on workplace violence. [Affidavit D]

TATANINA S. EVAN                    4J-600-0116-05

## Issue 2: Issued Notice Of Removal (Race, Color, Sex, and Retaliation Allegations):

Complainant testifies Postmaster Tindle, Manager Jelinek, and Supervisor Thaller discriminated against her when she was issued the Notice of Removal on May 26, 2005. She indicates she was issued the Notice of Removal for conduct unbecoming a Postal employee. Complainant testifies Postmaster Tindle discriminated against her when she refused to talk to her when she called Ms. Tindle about the incident. Complainant explains Manager Jelinek discriminated against her when he placed her in the Emergency Placement Off Duty Status without hearing her side of the story. She adds Mr. Jelinek made the decision based on what Carrier Carla Williams and Supervisor Thaller told him. Complainant states Ryan Thaller discriminated against her by not investigating what actually happened. She adds Mr. Thaller only investigated and believed what Carla Williams told him. Complainant testifies he did not investigate the part of the story where Ms. Williams initiated the situation by scratching her car. [Affidavit A]

When asked to indicate why she believes she should not have been issued the Notice of Removal, she responded "same as answer 14" which states "Other white employees such as Lane Linberg, Jerry Kloczkowski, Larry McConnell, Jeff Mette, Brian Riley, Jerry Quackenbush, Jeff Fullman, and more." Complainant states her race and color were factors when she was issued the Notice of Removal because all of the management officials are white, and Carla Williams, who is white, committed the hate crime and instigated the situation and was never issued disciplinary action. She testifies her sex was a factor because all of the officials that issued the discipline are males and she is female. Complainant adds her prior EEO activity was a factor because all the white officials involved issued her, a black female, discipline, yet at the same time protected a white female employee who committed a hate crime against her by scratching her car. [Affidavit A]

Complainant states the following employees have engaged in improper conduct and not been issued disciplinary action: Lane Linberg (White, Male), Jerry Kloczkowski (White, Male), Larry McConnell (White, Male), Jeff Mette (White, Male), Brian Riley (White, Male), Jerry Quackenbush (White, Male), and Jeff Fullman (White, Male). She adds Matthew Garner (Black, Male) and Dezi Martin (Black, Male) were issued a Notice of Removal or other disciplinary action for improper conduct. Complainant states she has suffered the following loss and harm as the result of being issued the Notice of Removal: she has no insurance benefits, no medical treatment, no income, has been denied unemployment benefits, cannot send her small children to day care, is in the process of being evicted, is in the process of having her car repossessed, has no food, poor health, hair loss, and a tremendous amount of stress that has led to major depression. When asked if Complainant filed a grievance regarding this issue, she responded "See attached". [Affidavit A]

**[Investigator's Note: An affidavit was not obtained from all of Complainant's named witnesses because it appears they cannot provide any additional relevant information not already contained in affidavit testimony or record evidence.]**

Mr. Jelinek testifies he concurred with the Notice of Removal because based on the result of the investigation, he determined that the Notice of Removal was appropriate given the situation. He explains there is no tolerance for one employee threatening another with acts of verbal intimidation and physical violence. Mr. Jelinek states Complainant had been a participant in service talks and she was aware of the policy on violence in the workplace. He testifies he relied on the policies found in the Employee and Labor Relations Manual, the National Agreement, and the Joint Statement on Violence in the Workplace. Mr. Jelinek states Complainant's race, sex, color, and prior EEO activity were not factors when he concurred with the decision to issue her the Notice of Removal. [Affidavit B]

Mr. Jelinek states Mr. Linberg (Male, Caucasian, White) and Mr. Kloczkowski (Male, Caucasian, White) had gotten into a verbal confrontation. Mr. Jelinek explains the Union, Mr. Lindberg, Mr. Kloczkowski, representatives for Mr. Linberg and Mr. Kloczkowski, and management officials held a meeting to discuss the incident. Mr. Jelinek explains during the meeting, it was determined that these two men had engaged in a verbal confrontation, but that there were no verbal threats or physical contact. Mr. Jelinek states therefore, these employees were not issued discipline or placed in an Emergency Placement Off Duty Status. [Affidavit B]

Mr. Jelinek explains the incident involving Mr. Linberg and Mr. Kloczkowski was not similar in nature to the one Complainant engaged in. He testifies in Complainant's case, there were threats of violence as well as physical contact. He explains Mr. Gardner (Black, Male, African-American) was removed for leaving first class mail in his Postal vehicle and not delivering it. Mr. Jelinek adds Mr. Martin (Male, Black, African-American) was removed because he was driving a Postal vehicle without a drivers license. He testifies Mr. Martin's license had been suspended and he did not notify any management officials. He states no employees have engaged in improper conduct and not been issued disciplinary action. Mr. Jelinek adds Complainant's grievance was denied and the Notice of Removal was issued. [Affidavit B]

Mr. Thaller testifies he issued Complainant the Notice of Removal because the USPS has a policy of zero tolerance for violence in the workplace. He adds based on the findings of the investigation, he believed the Notice of Removal was justified. Mr. Thaller states Complainant was observed by certain Postal employees, and later stated to Postal Inspectors, that she had verbally assaulted and threatened a coworker. He explains investigations revealed that unwanted physical contact had also been initiated by Complainant toward her coworker. Mr. Thaller testifies Complainant had not been given any specific warnings or counseled for improper conduct, but she was present for service talks dealing with the topic of violence in the workplace and she was aware of the Postal Service's zero tolerance policy. He states he relied on the policies found in the Employee and Labor Relations Manual, the National Agreement, and the Joint Statement on Violence in the Workplace. Mr. Thaller testifies Complainant's race, color, sex, and prior EEO activity were not factors when he issued her the Notice of Removal. [Affidavit C]

TATANINA S. EVAN                                    4J-600-0116-05

Mr. Thaller states no employees with the name Brian Riley or Jeff Fullman are employed
at the Elgin Post Office. He adds Lane Lindberg and Jerry Kloczkowski work at the
Elgin Mail Post Office and he does not supervise them. Mr. Thaller testifies he has no
first hand knowledge of any altercation they may have been involved in. Mr. Thaller
states he does not recall Larry McConnell having engaged in improper conduct. He adds
he is aware Mr. McConnell has not been involved in any conduct similar to that of
Complainant. Mr. Thaller explains he is not aware of Jeff Mette having been involved in
any conduct similar to that of Complainant. Mr. Thaller testifies Jerry Qualkenbush
(Caucasian, White, Male) engaged in improper conduct and was issued a Notice of
Removal, but adds his conduct was not similar to that of Complainant. [Affidavit C]

Mr. Thaller states he was not involved in any aspect of the Notice of Removals issued to
Matthew Gardner [Garner] or Dezi Martin. He explains he did not supervise these
employees because they worked at Elgin Main Office, not the Annex. Mr. Thaller
testifies he believes Mr. Garner was issued a Notice of Removal for improper handling of
mail and Mr. Martin was issued the Notice of Removal for driving a Postal vehicle with a
suspended license and failure to report the suspension of his driver's license. Mr. Thaller
states Mark Kamradt (Caucasian, White, Male) was issued disciplinary action for
improper conduct. He adds he has no knowledge of any employees engaging in improper
conduct and not being issued disciplinary action. Mr. Thaller testifies the NALC filed a
grievance on Complainant's behalf for the Notice of Removal. He explains the decision
rendered by the Postal Service's Northern Illinois District's Dispute Resolution Team
(DRT) was to uphold the Notice of Removal issued to Complainant. [Affidavit C]

Ms. Tindle states she did not have any involvement with the decision to issue
Complainant the Notice of Removal. She explains she supported Ryan Thaller and Bruce
Jelinek's decision to issue the Notice of Removal because the Postal Service has a zero
tolerance policy on workplace violence. [Affidavit D]

**Record Evidence:**

PS Form 50 establishes that Complainant was a Full Time City Carrier at the Elgin
Carrier Annex, Elgin, Illinois, and that he last day in pay status was on May 13, 2005
[Exhibit 1].

iComplaints Report for Complainant shows Complainant filed informal complaint # 4J-
600-0044-04 on December 3, 2003 [Exhibit 2].

Complainant's prior EEO activity, PS Form 2564-A, Information for Pre-Complaint
Counseling, dated December 12, 2005, shows Complainant had named Manager Bruce
Jelinek and Supervisor Ryan Thaller as having involvement in case # 4J-600-0044-04
[Exhibit 3].

Emergency Placement in Off-Duty Status issued to Complainant by Manager Bruce
Jelinek, dated April 21, 2005, stating she was placed in the Emergency Placement Status

TATANINA S. EVANS

because it had come to management's attention that she had allegedly threatened and assaulted a fellow employee on the evening of April 21, 2004 [Exhibit 4].

Investigative Memorandum regarding Complainant's alleged improper conduct, dated May 5, 2005, which includes witness statements regarding the incident the occurred between employee Carla Williams and Complainant on the night of April 21, 2005. Carla Williams told Postal Inspectors she was hanging up keys to her Postal vehicle when Complainant yelled out "hey, you put a scratch on my car." Ms. Williams explained Complainant repeated this several times and then said if Ms. Williams ever touched her car again, she would slap her around. Ms. Williams said she was standing by Mr. Thaller's office waiting to see him and Complainant came by and bumped Ms. Williams with her arm and said "and let that be a warning to you, that if you ever go near my car we'll just go out here and I'll slap you around." Mr. Thaller explains he heard Ms. Williams stating "Don't threaten me!" Mr. Thaller said he turned and saw Complainant, and when she saw him stated "I ain't threatening you! Ryan can hear this. I'm telling you that if my car gets another mark, it's you and me outside. I'm gonna let this one slide though." Sharlene Merwin explains she hear a lady say to Ms. Williams that Ms. Williams had put a dent in her car. Ms. Merwin adds she heard the other lady say she would slap Ms. Williams across the face. Ms. Merwin said she saw no physical contact between Ms. Williams or the Complainant. Kim Ranney said she heard Complainant tell Ms. Williams that Ms. Williams had marked her car and that if she marked her car again, Complainant would slap her. Complainant explains she asked Ms. Williams "would I be wrong if I slap your ass in your face like you scratched my car?" Complainant adds Ms. Williams replied "Are you threatening me?" Complainant said she apologized to Ms. Merwin and Ms. Ranney. Complainant adds she never had any physical contact with Ms. Williams [Exhibit 5].

Notice of Removal issued to Complainant by Supervisor Ryan Thaller, dated May 26, 2005, for improper conduct for threatening and assaulting another employee. Specifically, Complainant noticed a scratch on her car on April 20, 2005, at approximately 4:45 P.M. The document states Complainant went up to Carla Williams and asked her why she scratched your car. Complainant further stated "Would I be wrong if I slap your ass in your face like you scratched my car?" Complainant further stated "I don't have time, but the next time you need to be more careful or I will kick your ass about my shit." According to Ms. Williams, Complainant also bumped Ms. Williams with her shoulder and stated "and let that be a warning to you, if you ever go near my car we'll just go out here and I'll slap you around" [Exhibit 6].

Elgin Annex Daily Safety Message Log for April, 2004, showing daily safety messages were given regarding workplace violence during the third week in April. The OSHA Fact Sheet is regarding workplace violence that was read to employees during the safety talks given in week three. The Fact Sheet covers topics including what constitutes workplace violence, who is vulnerable, how employers can protect employees, how employees can help themselves, and what employers should do following an incident of workplace violence. The attendance sheet shows Complainant was present during a

TATANINA S. EVANS                                          4J-600-0116-05

safety talk given on February 14, 2002 by Mr. Thaller regarding workplace violence [Exhibit 7].

Complainant's Step A Grievance, dated August 16, 2005, asking that grievant be returned to active status; and Step B Decision, dated September 6, 2005, stating the issuance of the Notice of Removal was for just cause [Exhibit 8].

Notice of Removal issued to Jerome Qualkenbush by Supervisor Ryan Thaller for conduct unbecoming a Postal employee, dated April 23, 2004, Notice of Removal issued to Desi Martin by Supervisor Dusek for Driving a Postal Vehicle With a Suspended License, dated March 25, 2005, Notice of Removal issued to Mark Kamradt by Ryan Thaller for Unacceptable Conduct, dated February 14, 2002, and Notice of Removal issued to Mathew Garner by Supervisor Eric Selin for Delay of Mail, dated September 3, 2002 [Exhibit 9].

PS Forms 50 showing Lane Linberg, Jerry Kloczkowski, and Jeff Mette are full time Carriers at the Elgin Post Office in Elgin, Illinois; Mark Kamradt was a full time Carrier at Elgin Post Office in Elgin, Illinois, and that his last day in pay status was on February 8, 2002. Matthew Garner was a full time Carrier at Elgin Post Office in Elgin, Illinois, and his last day in pay status was on September 20, 2002, Desi Martin was a full time Carrier at Elgin Post Office, in Elgin, Illinois, and his last day in pay status was on April 29, 2005, Lawrence McConnell, Jerome Qualkenbush, and Carla Williams are full time Carriers at the Elgin Carrier Annex in Elgin, Illinois; and Jeff Fullman is a full time Mail Processing Clerk at Palatine Processing & Distribution Center, in Palatine, Illinois [Exhibit 10].

**[Investigator's Note:  Management is unaware of an employee by the name of Brian Riley, and there is no record of his name in the system.  Therefore, a PS Form 50 could not be obtained for Brian Riley.]**

**Applicable Policies:**

Agreement between the National Association of Letter Carriers and the United States Postal Service, AFL-CIO, 2001-2006, Article 3, Management Rights, showing the Employer shall have the exclusive right to suspend, demote, discharge, or take other disciplinary action against such employees [Exhibit 11].

Agreement between the National Association of Letter Carriers and the United States Postal Service, AFL-CIO, 2001-2006, Article 16, Discipline Procedure, Section 7, Emergency Procedure, stating an employee may be immediately placed in an off-duty status by the Employer, but remain on the rolls where the allegation involves failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self and others [Exhibit 12].

Agreement between the National Association of Letter Carriers and the United States Postal Service, AFL-CIO, 2001-2006, Article 16, Discipline Procedure, Section 5, Suspensions of More Than 14 Days or Discharge, stating in the case of suspensions of more than fourteen days or of discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her [Exhibit 13].

Employee and Labor Relations Manual 17.10, dated May 26, 2005, Section 665.16, Behavior and Personal Habits stating employees are expected to maintain harmonious working relationships and not do anything that would contribute to an unpleasant working environment [Exhibit 14].

Employee and Labor Relations Manual 17.10, dated May 26, 2005, Section 665.24, Violent and/or Threatening Behavior, stating the Postal Service is committed to the principle that all employees have a basic right to a safe and humane working environment and adds there must be no tolerance of harassment, intimidation, threats, or bullying by anyone at any level [Exhibit 15].

Postal Bulletin 21811, Joint Statement on Violence and Behavior in the Workplace, dated March 19, 1992, stating there will be no excuse for and will be no tolerance of violence or any threats of violence by anyone at any level of the Postal Service, and that there is no excuse for and will be no tolerance of harassment, intimidation, threats, or bullying by anyone [Exhibit 16].

**Comparative Data:**

**(1)     Emergency Placement and Notice of Removal:**

Complainant states the following employees have engaged in improper conduct and not been issued disciplinary action: Lane Linberg (White, Male), Jerry Kloczkowski (White, Male), Larry McConnell (White, Male), Jeff Mette (White, Male), Brian Riley (White, Male), Jerry Quackenbush (White, Male), and Jeff Fullman (White, Male). She adds she is not aware of any other employees that have been issued disciplinary action for engaging in improper conduct. Complainant states Matthew Garner (Black, Male) and Dezi Martin (Black, Male) were issued a Notice of Removal or other disciplinary action for improper conduct. [Affidavit A]

Mr. Jelinek states Mr. Linberg (Male, Caucasian, White) and Mr. Kloczkowski (Male, Caucasian, White) had gotten into a verbal confrontation. Mr. Jelinek explains the Union. Mr. Lindberg, Mr. Kloczkowski, representatives for Mr. Linberg and Mr. Kloczkowski, and management officials held a meeting to discuss the incident. Mr. Jelinek explains during the meeting, it was determined that these two men had engaged in a verbal confrontation, but that there were no verbal threats or physical contact. Mr. Jelinek states therefore, these employees were not issued discipline or placed in an Emergency Placement Off Duty Status. He explains the incident involving Mr. Linberg and Mr. Kloczkowski was not similar in nature to the one Complainant engaged in. Mr.

TATANINA S. EVANS                                    4J-600-0116-05

Jelinek testifies in Complainant's case, there were threats of violence as well as physical contact. He adds he is not aware of Larry McConnell, Jeff Mette, Brian Riley, Jerry Quackenbush, or Jeff Fullman engaging in physical violence or threatening fellow employees. Mr. Jelinek states he has not disciplined any other employees for violence in the past few years. He explains Mr. Gardner (Black, Male, African-American) was removed for leaving first class mail in his Postal vehicle and not delivering it. Mr. Jelinek adds Mr. Martin (Male, Black, African-American) was removed because he was driving a Postal vehicle without a drivers license. He testifies Mr. Martin's license had been suspended and he did not notify any management officials. He testifies no employees have engaged in improper conduct and not been issued disciplinary action. [Affidavit B]

Mr. Thaller states no employees with the name Brian Riley or Jeff Fullman are employed at the Elgin Post Office. He adds Lane Lindberg and Jerry Kloczkowski work at the Elgin Mail Post Office and he does not supervise them. Mr. Thaller testifies he has no first hand knowledge of any altercation they may have been involved in. Mr. Thaller states he does not recall Larry McConnell having engaged in improper conduct. He adds he is aware Mr. McConnell has not been involved in any conduct similar to that of Complainant. Mr. Thaller explains he is not aware of Jeff Mette having been involved in any conduct similar to that of Complainant. Mr. Thaller testifies Jerry Qualkenbush (Caucasian, White, Male) engaged in improper conduct and was issued a Notice of Removal. but adds his conduct was not similar to that of Complainant. [Affidavit C]

Mr. Thaller states he was not involved in any aspect of the removal issued to Matthew Gardner [Garner] or Dezi Martin. He explains he did not supervise these employees because they worked at Elgin Main Office, not the Annex. Mr. Thaller testifies he believes Mr. Garner was issued a Notice of Removal for improper handling of mail and Mr. Martin was issued the Notice of Removal for driving a Postal vehicle with a suspended license and failure to report the suspension of his driver's license. Mr. Thaller states Mark Kamradt (Caucasian, White, Male) was issued disciplinary action for improper conduct. He adds he has no knowledge of any employees engaging in improper conduct and not being issued disciplinary action. [Affidavit C]



TATANINA S. EVANS                                    4J-600-0116-05

## Matrix 1:    Employees Engaging In Improper Conduct

| Name | Race | Color | Sex | Discipline Issued | Issued By |
|---|---|---|---|---|---|
| Complainant | African American | Black | Female | Emergency Placement / Notice of Removal | Jelinek / Thaller |
| Garner, M. | African American | Black | Male | Notice of Removal | Selin |
| Kamradt, M. | Caucasian | White | Male | Notice of Removal | Thaller |
| Kloczkowski, J. | Caucasian | White | Male | None | N/A |
| Linberg, L. | Caucasian | White | Male | None | N/A |
| Martin, D. | African American | Black | Male | Notice of Removal | Dusek |
| Qualkenbush, J. | Caucasian | White | Male | Notice of Removal | Thaller |

[Affidavits A, B, and C]

## Compensatory Damages:

### Affidavit Testimony (Compensatory Damages):

Complainant testifies she has suffered financial difficulties due to lost insurance benefits, medical treatment, no unemployment benefits, eviction, car repossession, credit card debt, utilities, and has been unable to pay her bills. She adds her financial difficulties began April 20, 2005, and have continued to the present. Complainant explains she has suffered from severe migraine headaches, severe nose bleeds, loss of hair, and overall depression. Complainant testifies she did not seek psychiatric counseling because she does not have medical insurance. Complainant has had to take the following medications as a result of the discrimination alleged in this complaint: Prednisone, Doxycicline, Fluoxetinel, Tylenol and Codine III, and Albuterol. She states none of the difficulties existed prior to the acts of alleged discrimination. Complainant adds her asthma continues to flair up due to the tremendous stress she is under. [Affidavit A]

### Record Evidence (Compensatory Damages):

Complainant's Discharge Instructions from the Emergency Department at Rush-Copley Medical Center, dated August 17, 2005, showing Complainant suffers from asthma, headache, and depression [Exhibit C-17].

Complainant's prescription forms filled out by Dr. Timothy P. Coggin, not dated, for Prednisone, Doxycicline, Fluoxetinel, Tylenol and Codine III, and Albuterol [Exhibit C-18]

tatanina evans
2939 Shelly Lane
Aurora, IL 60504-5892                    EEOC Case No. 4J-600-0116-05

# EEO INDIVIUAL COMPLAINT

Tatanina Evans is filing this EEO complaint against Customer Service Manager Bruce Jelinek, mail carrier Carla Williams, Customer Service Supervisor Ryan Thaller and Postmaster Diane Tindel. Miss Evans is charging these individuals who are all white with racial discrimination, racial profiling and covering up a hate crime. Miss Evans was sent a letter from Bruce Jelinek Manager of Customer Service informing her she was being placed on Emergency Placement in a Off-Duty Status without pay. The reason cited in the letter for this action is that Miss Evans allegedly assaulted a fellow employee on the evening of April 20th, 2005. In the notice of removal dated May 26, 2005, the third paragraph of this letter states:

> "According to Ms. Williams, you also bumped into her with your arm and as you
> Were leaving the building you stated "and let that be a warning to you, if you ever
> Go near my car we'll just go out here and slap you around."

The key phrase in that above stated paragraph is "ACCORDING TO MISS WILLIAMS," in a situation in which an employee accuses another employee of assaulting them, if that employee has no telling bruises or marks that suggest a physical assault, if there are no witnesses who saw the employee being assaulted, if there is no physical video tape of the employee being assaulted, the accuser accusations has to be treated as hearsay. So basically Miss Evans was put on Emergency Placement in Off-Duty Status without pay based off hearsay by a white female employee that she had an altercation with earlier that morning. It was based on this earlier altercation between Miss Evans and Miss Williams that ignited this dispute, which was frankly Miss Williams fault. After Miss Evans punched out to go home she noticed a small scratch on her car, the only person that was parked next to her was Miss Williams, so if Miss Williams would have moved her car as Miss Evans politely asked her, so she would not have been parked too close to Miss Evans car. this disputed would not have happened, and I ensure you this is nothing more than a dispute about someone white committing a hate crime against someone Black property. Based off the lack of evidence from the accuser Miss Evans did not warrant to be placed on Emergency Off-Duty Status without pay, this situation should have been handled under 661.821 of the ELM which deals with Remedial Action to be taken when there is a possible conflict. There were several conflicts of interest when it came to Miss Evans case, first the accuser is white, second the all the supervisors involved are white, third there was an altercation between Miss Evans and Miss Williams earlier that morning, fourth Miss Evans allegation of damage to her car, fifth Miss Evans participation in an earlier group EEO filing against management for racial discrimination. Miss Evans was never sat down to talk about these five points of conflict of interest that should have had resulted in no more than a verbal warning to both employees. By management treating Miss Williams hearsay evidence as fact because she was white and the management officials involved are white, they violated 661.21 of the ELM which deals with Congressional Code of Ethics for Government

Service, this code states, "Never discriminate unfairly by the dispensing of special favors and privileges for remuneration or not." By treating Miss Williams accusations of assault as fact instead of hearsay, Miss Evans was discriminated against by Customer Serviced Supervisor Bruce Jelinck, Supervisor Ryan Thaller and Postmaster Diane Tindel, who refused to accept a call by Miss Evans so that she could explain that the incident did not happen as it was alleged. A special favor was dispensed by these three managers who are white for Miss Williams who is white, when they took her at her word that she was assaulted (bumped) by Miss Evans, without any video tape or witnesses, which I said before is a violation of 661.21 of the ELM.

The failure to act on Miss Evans accusations that Miss Williams committed a hate crime against her car by scratching it, was a blatant act of racial discrimination by white officials protecting a white employee, which is a direct violation of 661.51 of the ELM which states:

> "No employee while acting in an official capacity will directly or indirectly
> Authorize, permit, or participate in any action, event, or course of conduct
> Which subjects any person to discrimination, or results in any person being
> Discriminated against, on the basis of race, color, religion, sex, national
> 'origin, age (40+), or physical or mental handicap, or any other non-merit
> Factor."

Our sources tell us that there was an altercation between two white mail carriers Lane Linberg and Jerry Kloczkowski around June of 2005 that was swept under the rug. I am told that union rep Bob Banning made Diane Tidel aware of the incident. To our knowledge these two were not placed on Emergency Placement in Off-Duty Status, this is discrimination by conduct with race playing a definite factor towards who gets discipline and who does not. 668.112d. States:

> "No person may be discriminated for or against on the basis of conduct which
> Does not adversely affect a person's performance or the performance of other;
> Except for determining suitability or fitness of that person, any conviction for
> Any crime under the laws of any state, of the District of Columbia, or of the
> Of the United States may be taken into account."

If this is true Miss Evans has no business being on Emergency Placement in Off-Duty Non-Pay Status, an Phillipino employee by the name of Gilbert Ortiz filed an incident report against a white 204b supervisor by the name of Brian Riley. Mr. Ortiz is an Electronic Technician and states in his incident report that he was sitting down near the machine he was assigned to, when Mr. Riley came over and told him to "GET THE FUCK OUT THAT CHAIR. " Mr. Ortiz said when he got out the chair Mr. Riley picked up the chair and threw it in a manner that Mr. Ortiz feared for his safety, in a redress with EEO Case No. 1J-602-0036-05 Mr. Riley admitted to these actions. MDO Rosemary Kane who is white admitted in a redress that she had hear of Mr. Riley doing this, but she did not put Mr. Riley on Emergency Placement in Off-Duty Non-Pay Status like Miss Evans and Miss Kane allowed Mr. Riley to take a couple days off because he is white and she is white. Miss Kane obviously participated in a hate crime with Mr. Ortiz, against Mr. Ortiz, just like Miss Evans had a hate crime committed against her by the three before mentioned charged white managers. If Mr. Riley who admitted to doing the things he is charged with not only kept his job, but was never put on Emergency Placement in Off-Duty Non-Pay Status, to put Miss Evans on Emergency Placement in Off-Duty Non-Pay Status with intentions of removal from the Postal Service, is discrimination by conduct with race being the determining factor for who gets discipline and who does not. At this point it seems all the people of color are the ones being treated adversely with punitive action instead of corrective action as the contract states discipline should be dealt with.

A Black female employee name Celestine Calhoun was assaulted by a white male employee Mr. Jeff Fullman, to protect the white male employee they gave both Mrs. Calhoun and Mr. Fullman letters of warnings, even though Mr. Fullman was walked out the building an took off the clock. MDO Rosemary Kane of Palatine P&DC not only admitted she knew about it, but she talked to Miss Calhoun who was in tears after the incident. Mr. Fullman was not placed on Emergency Placement in Off-Duty Non-Pay Status like Miss Evans was, Miss Calhoun even had a order of protection filed against Mr. Fullman, but MDO

Rosemary Kane who is white felt no action had to be taken against Mr. Fullman because he is white. Mr. Fullman had more evidence against him to substantiate that he did assault Miss Calhoun than Miss Evans had against her to substantiate any assault happened against Miss Williams. This is an obvious violation of 668.112d discrimination based on conduct, with race being the determining factor who receives discipline and who does not. Miss Evans is accused of assaulting Miss Williams, even though Miss Williams has no video tape or witnesses to substantiate Miss Evans physically assaulted her, because Miss Williams is white and Miss Evans is Black, Miss Evans automatically receives a removal. When two white employees are accused of a much more severe act than Miss Evans, and Mr. Riley even admits to it, these two white employees are exonerated of any discipline that they deserve because of a racist manager that loves to commit hate crimes on people of color, especially Black people. Miss Evans is definitely a victim of racial profiling and a victim of a hate crime, once you sit down and analyze the evidence and the circumstances around the incident, and then compare them to similar situations or situations where the severity of the situation is greater, you will see that little or no discipline were issued in those situations. So for Miss Evans to receive this most extreme discipline as to remove her from her job is ridiculous and ludicrous, she is a victim of racial profiling, retaliation and a victim of a hate crime, she must be made whole by granting her demands in her resolution, in her original EEO complaint which I will send in with this individual complaint. As you know according to the ELM there can be no discrimination based on opportunity, after supervisor Brian Riley threw the chair in a threatening manner, he had the opportunity to keep his job, after Jeff Fullman assaulted Celestine Calhoun Mr. Fullman had the opportunity to keep his job. After an altercation between Lane Linberg and Jerry Kloczkowski, they had the opportunity to keep their jobs. In the case of Miss Evans she was deprived of the opportunity to keep her job, even though similar circumstances connect these incidents. By being deprived of the opportunity to keep her job, Miss Evans has suffered a loss of her apartment, a loss of health because of the mental stress involved in caring for her children without an income. Miss Evans and her children have to suffer because she is a Black woman, yet Mr. Fullman's family does not have to suffer because he is white, Mr. Riley's family does not have to suffer because he is white, Mr. Linberg's family does not have to suffer because he is white and Mr. Kloczkowski's family does not have to suffer because he is white. When racist people control the decision making process, and use that decision making process to destroy the lives of people of color unjustly, then you have the makings of a hate crime. There was a hate crime committed against Miss Evans when punitive action was taken against her, now we must do the right thing and use corrective action to make tatanina evans WHOLE.

anita hatcher
EEO COUNSEL SPECIALIST
NO HARASSMENT FOUNDATION

By these white Officials committing this act of racism against Miss Evans, she has become finiacially, emotionally and physically drained

# RESOLUTION

1. Miss Evans would like her job back with back pay

2. Miss Evans requests to be placed to another location, because she is already stress from taking care of her dying mother, she says her problem did not start until she got approved for FMLA. Miss Evans cannot work under the conditions of discrimination, showing other employees favortism and the racial profiling of Blacks employees at the facility.

3. Miss Evans requests for monetary damages the highest amount of money allowed under the law, for her being a victim of racial profiling, discrimination and having a hate crime committed against her on a Government facility, where white Officials turned there heads to the prospect that a white woman could have committed this crime.

Ms T. Evans
2939 Shelly Dr.
Aurora, CCl 60504

**RETURN RECEIPT REQUESTED**

Manager EEO Compliance
And Appeals
224 Knollwood Drive #2
Bloomingdale, IL 60117-3010



CERTIFIED MAIL

7005 0390 0001 8404 4566




926H





U.S. POSTAGE
PAID
NAPERVILLE, IL
00540
AUG 13. '05
AMOUNT
$4.28

Area EEO Compliance and Appeals
Great Lakes Area Office

 **UNITED STATES
POSTAL SERVICE**

---

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

---

**Tatanina Evans,**
Complainant,

**Agency No.:**   4J-600-0116-05

v.

**John E. Potter**
Postmaster General,
United States Postal Service,
Respondent

**Filed On:**   8/13/05

---

# ACKNOWLEDGMENT LETTER

Your complaint of discrimination referenced above has been received and the official date on which it is considered to have been filed is the date indicated above (date postmarked, or absent a legible postmark, if it is received within five days of the expiration of the applicable filing period).

The Area EEO Compliance & Appeals Office will make a determination regarding the further processing of your complaint. Once that determination is made, you will be advised as to the status of your complaint by this office.

If your complaint is accepted for investigation, in whole or in part, it will be assigned to a contract EEO investigator who will contact you to obtain your affidavit. The Postal Service is required to conduct an impartial and appropriate investigation of the complaint within 180 days of date you filed the complaint unless the parties (you and the Postal Service) agree in writing to extend the time period. If you amend (add issues or claims that are like or related to) your complaint, the Postal Service is required to complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint, except that you may request a hearing from an administrative judge on such consolidated complaints any time after 180 days from the date of the first filed complaint noted above.

When the investigation is completed, you will receive a copy of the report of investigation. At that time you also will be advised of your right to elect one of the following two options regarding the further processing of your complaint:

244 KNOLLWOOD DRIVE, 2ND FLOOR
BLOOMINGDALE, IL 60117-3010
(630) 539-8188

Option 1: Request a hearing before an Administrative Judge appointed by the Equal Employment Opportunity Commission (EEOC) by making such a request, in writing, to the District Director at the following address:

**Chicago District Office**
**Equal Employment Opportunity Commission**
**500 W. Madison Street, Suite 2800**
**Chicago, IL 60661-2511**

Option 2: Request that the Postal Service issue a final agency decision without an EEOC hearing by writing to the following individual:

**Manager, EEO Compliance & Appeals**
**Great Lakes Area Office – USPS**
**244 Knollwood Drive, 2nd Floor**
**Bloomingdale, IL 60117-3010**

If your complaint is not accepted for investigation, but is dismissed, you will have the right to appeal that dismissal. Similarly, if further in the complaint process you are issued a notice of final action by the Postal Service, you will have the right to appeal that determination. Any appeal of a dismissal or final action would be sent to the following address:

**Office of Federal Operations**
**Equal Employment Opportunity Commission**
**PO Box 19848**
**Washington, DC 20036-9848**

_(signature)_
_____
Name
Sr., EEO Complaints Investigator

<u>August 15, 2005</u>
Date

Formal Complaint
Page _8_ of _10_

# CERTIFICATE OF SERVICE

**For timeliness purposes, it will be presumed that the foregoing document,** *Acknowledgment Letter*, **was received within five- (5) calendar days after it was mailed. I certify that on this date, this document was mailed to the following parties:**

Tatanina Evans
2939 Shelly Lane
Aurora, IL 60504-5892

Anita Hatcher
211 N Kaspar Ave APT 104
Arlington Heights, IL 60005-1270

Manager, EEO Dispute Resolution
Northern Illinois District

*Stephanie Shannon*
Stephanie Shannon

<u>August 15, 2005</u>
Date



**UNITED STATES
POSTAL SERVICE**

# Notice of Right to File Individual Complaint

TO: Name *(First, MI, Last)*

**TATANINA EVANS**

Re: Case No.

**4J-600-0116-05**

This notice will attest to the fact that on _____**August 3, 2005**_____, I advised you of the actions taken concerning the alleged discrimination that you brought to my attention. If the matters that you raised during the pre-complaint processing stage have not been resolved, you have the right to file a formal complaint within 15 calendar days of the date you received this notice. If you decide to file a formal complaint, your complaint must be put in writing and signed by you or your attorney, if you retain one to represent you. I am providing you with *PS Form 2565, EEO Complaint of Discrimination in the Postal Service,* for this purpose. The complaint must be delivered to:

> MANAGER EEO COMPLIANCE AND APPEALS
> 244 KNOLLWOOD DRIVE, 2ND FLOOR
> BLOOMINGDALE, IL. 60117-3010

Your complaint will be deemed timely filed if it is received at this address before the expiration of the 15-day filing period, or if it bears a postmark that is dated before the expiration of the filing period. In the absence of a legible postmark, it must be received by mail within 5 calendar days of the expiration of the filing period.

An EEO discrimination complaint can be processed only if the complainant alleges he or she has been discriminated against on the basis of race, color, religion, sex, age (40+), national origin, disability or retaliation for past EEO activity. In addition, courts have ruled the complainant has the burden of presenting evidence which would give rise to an inference of discrimination. A complaint must contain the following information:

(1) Your name, address, position, and level;

- ■ If you change your address, you have a regulatory requirement to immediately report the change to the Manager, EEO Compliance and Appeals, in your area. *(If you are employed at Postal Service Headquarters, a Headquarters Field Unit or by the Postal Inspection Service, you should notify the EEO Appeals Review Specialist at Postal Service Headquarters.)*

(2) The specific action or matter complained of, the date of occurrence, and the names of the official(s) who took the alleged discriminatory action at issue in this complaint;

(3) The specific type of discrimination alleged, e.g. race – African American, sex - female, etc.;

- ■ If you allege disability discrimination, the alleged disability must be more than a temporary condition.
- ■ If you allege age discrimination, you must have been at least 40 years of age on the date the alleged discriminatory action occurred.

(4) A brief statement of the facts that led you to believe you were discriminated against and the names of similarly situated individuals whom you believe were treated differently than you.

- ■ If you allege a failure to accommodate a disability or your religion, you must explain the accommodation sought and why you sought it.
- ■ If you allege retaliation, you must show a connection between the action at issue in the complaint your are filing and your past EEO activity. You must also show that when the alleged discriminatory action at issue in this complaint occurred, the management who took the action was aware that you had previously engaged in protected activity.

(5) The name of the EEO Dispute Resolution Specialist who provided you with this notice and the date you received this Notice of Right to File.

**Privacy Act Notice**

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972; 42 U.S.C. § 2000e-16. The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations,

Contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

| Signature of Dispute Resolution Specialist | Date | Your Signature | Date Received |
|---|---|---|---|
| *[signature]* | 08/03/2005 | *Tatanina S Evans* | 8-12-05 |

*Dispute Resolution Specialist: If you are mailing this Notice, you must send it by Certified Mail, Return Receipt Requested*

PS Form 2579-A, March 2001

**Formal Complaint
Page 10 of 10**



tatanina evans
2939 Shelly Lane
Aurora, IL 60504

UNITED STATES POSTAL

JUN 1 4 2005

## EEO COMPLAINT

Tatanina Evans is filing an EEO against Customer Service Manager Bruce
Jelinek, mail carrier Carla Williams, Customer Service Supervisor Ryan Thaller
and
Postmaster Diane Tindel. This EEO is being charged against these indiviuals for
racial profiling, discrimination and covering up of a hate crime. Miss Evans was
sent a letter dated April 21, 2005 from Bruce Jeinek Manager of Customer
Services. The letter was informing Miss Evans that she was being placed on
Emergency Placement in Off-Duty Status without pay. The reason cited in the
letter for this action was Miss Evans allegedly threatened and assaulted a fellow
employee on the evening of April 20, 2005. In the before mentioned letter I hear
everything that Miss Evans is suppose to have done, but I hear nothing about
what Miss Evans said Miss Carla Williams did to her car. 661.821 of ELM states:

> "Whenever a possible conflict of interest, or appearance of a
> a conflict of interest, on the part of an employee or special
> employee comes to the attention of the Ethical Conduct
> Officer, an Associate Ethical Conduct Officer, or a person designated
> to assist or act for an Associate Ethical Conduct Officer, that Officer
> ascertains whether a conflict or appearance of conflict of interest
> exists. The employee or special employee concerned will be provided
> an opportunity to explain the conflict or appearance of conflict. After
> considering the explanation, the Officer determines whether action is
> required. If so, and the employee or special employee is not under
> the Officer's general supervision, the Officer will recommend to the
> employee's installation head that action be taken to end the conflict
> or apperance of conflict of interest."

There was a conflict of interest from the beginning, Miss Evans and Mrs.
Williams had a confrontation that morning around 7:20 am in the parking lot,
when Mrs. Willams parked to close to Miss Evans car, Miss Evans politely told
Mrs. Williams that she was parked to close to her car, and that she would have
problems getting out the car. Mrs. Williams then replied "move your car over or
move to another parking space". Miss Evans was pulled in her park, Mrs.

Williams was backed into her park. Miss Evans was already parked before Mrs. Williams arrived, this is where this incident should have been examined to find out why Miss Evans was provoked to act the way she did. When Miss Evans came out and saw the scratch on her car, she naturally assumed that Mrs. William had something to do with it because they had words earlier that morning about Mrs. Williams being parked too close to Miss Evans. By the accuser being white, and all the supervisor being white, plus the circumstances around the incident, made this a case for Remedial the Action. Remedial Action was not taken by Customer Service Supervisor Ryan Thaller, Miss Evans never was sat down to tell her side of the story before any actin was taken, an investigation never was conducted to find out who scratched Miss Evans car. That in itself is discrimination on the part of all the white managers involved in putting Miss Evans on an Off Duty with Non-Payment Status. Mrs. Carla Williams has alleged Miss Evans bumped her, where is the video of this bumping, this is showing favortism to an employee. Miss Evans alleged Mrs. Williams scracthed her car, yet Mrs. Williams was not put in a Off-Duty with Non-Pay Status. 661.21 of the Congressionional Code Of Ethics for Government Service States:

> "5. Never discriminate unfairly by the despencing of special favors or privileges to any one whether for remuneration or not and never accept for self or family favors or benefits under curcumstances which might be construed by reasonable persons as influencing the performance of Govermental Duties"

JUN 1 4 2005<br>UNITED STATES POSTAL SERVICE

All the white officials involved in placing Miss. Evans on an Emergency Off-Duty Status without pay have violated 661.21 of the ELM which is the Congressional Code Of Ethncs for Government Services. Mrs. Williams was shown a favor by The

all the white supervisors involved that did not investigate the charges of Miss. Evans

when she alleged Mrs. Williams scratched her car. They also showed Mrs. Williams a favor when they included in the letter of proposed removal that Mrs. Williams said that Miss Evans bumped her. This is just hearsay, there is no video, no witness to substantiate her claim. So all we are left with is a woman who was angered because a hate crime had been committed on her car. And the person she accused of the hate crime just so happened to be the same indiviual that she an altercation with earlier that morning for parking too close to her car. This is no doubt a case of racial profiling, discrimination and retaliation by a group of white officials trying to cover up a hate crime. Miss Evans had filed a EEO compliant years earlier on a group of white officials for discrimination,so therefor this EEO complaint is also being filed for retaliation. Miss Evans tried to contact Postmaster Diane Tindel, but was told by a union rep that Miss Tindel did want anything to do with Miss Evans situation. This is blantant racism, the only thing Miss Evans wanted to do was to show that her actions were triggered by a hate crime, but the Official involved that had a chance to show her consideration but did not were white. So therefore Miss Evans has no choice but to file an EEO for racial profiling, discrimination and the cover up of a hate crime by all the



white Officials mentioned. By these white Officials committing this act of racism against Miss Evans, she has become finiacially, emotionally and physically drained.

# RESOLUTION

1. Miss Evans would like her job back with back pay

2. Miss Evans requests to be placed to another location, because she is already stress from taking care of her dying mother, she says her problem did not start until she got approved for FMLA. Miss Evans cannot work under the conditions
   of discrimination, showing other employees favortism and the racial profiling of Blacks employees at the facility.

3. Miss Evans requests for monetary damages the highest amount of money allowed under the law, for her being a victim of racial profiling, discrimination and
   having a hate crime committed against her on a Government facility, where white
   Officials turned there heads to the prospect that a white woman could have committed this crime.



UNITED STATES POSTAL SERVICE

JUN 1 4 2005

EEO Compliance and Appeals
Great Lakes Area Office




**UNITED STATES**
**POSTAL SERVICE**

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

| | | |
|---|---|---|
| Tatanina S. Evans,<br>Complainant, | **Agency No.:** | 4J-600-0116-05 |
| **v.** | | |
| John E. Potter,<br>Postmaster General,<br>United States Postal Service,<br>Respondent | **Filed On:** | August 13, 2005 |

## ACCEPTANCE OF COMPLAINT

**The Postal Service has received your complaint of discrimination and it has been accepted for investigation. Your investigation will now be processed by the National EEO Investigative Services Office located in Tampa, FL. The investigative processing of your case will be handled by an investigator assigned by the National EEO Investigative Services Office.**

You have alleged that you were discriminated against on the bases of race (African-American), color (black), sex (female) and retaliation (prior EEO activity), when 1] on April 21, 2005, you were placed in an Emergency Placement in an Off-Duty Status without pay; and 2] you were issued a Notice of Removal dated May 26, 2005 for improper conduct.

**_NOTE:_** If your complaint involves an allegation of age discrimination, the Postal Service is required by the Age Discrimination in Employment Act of 1967, as amended, to advise you that you may consult with an attorney should you desire to do so before signing of any agreement resolving your complaint of age discrimination.

**If you do not agree with the acceptance letter, you must provide the Sr., EEO Complaints Investigator at the Great Lakes Area Office with your objections, in writing, within seven (7) calendar days from the date of your receipt of this letter.** If you do not wish to proceed with this complaint, you may request a withdrawal form from this office.

24 KNOLLWOOD DRIVE, 2ND FLOOR
BLOOMINGDALE, IL 60117-3010
PHONE: (630) 539-8186
FAX: (630) 539-8388

Issues to be Investigated
Page _1_ of _4_

Your investigation will be completed within 180 calendar days (depending upon the workload volume of the investigator), from the date on which you filed your formal complaint, except that you and the Postal Service may voluntarily agree, in writing, to extend the time period by up to an additional ninety- (90) calendar days. Should you seek to amend your complaint, any amendment would extend the time period for completing the investigation by an additional 180 days except that the investigation of this complaint and any amendments could not extend past 360 calendar days from the date on which you filed this formal complaint.

If you have a grievance pending on the same issue(s) as those raised in this complaint, the Postal Service may, at its discretion, defer the processing of this complaint until the grievance procedure has run its course and there has been a final resolution of the grievance. When an investigation is deferred pending the outcome of the grievance process, the 180-day time period for processing this complaint is stopped and does not restart until the grievance is resolved. If the Postal Service decides to defer the processing of this investigation as was just described, you will be notified in writing and advised of any options, which you may have as a result.

When this investigation is completed, you will receive a copy of the report of investigation and you will be advised of your right to request a hearing before an Administrative Judge appointed by the Equal Employment Opportunity Commission (EEOC) or of your alternative right to request a final agency decision by the Postal Service without a hearing. You may request *a final agency decision without a hearing,* at the appropriate time, by writing to the:

> **Manager, EEO Compliance and Appeals**
> **Great Lakes Area Office**
> **244 Knollwood Drive, 2nd Floor**
> **Bloomingdale, IL 60117-3010**

You may request a hearing before an EEOC Administrative Judge by making such a request, in writing, to the *District Director of the EEOC* at the following address:

> **Chicago District Office**
> **Equal Employment Opportunity Commission**
> **500 W. Madison Street, Suite 2800**
> **Chicago, IL 60661-2511**

You must make your hearing request within thirty- (30) calendar days of the date on which you received the report of investigation and you must provide the Sr., EEO Complaints Investigator at the Great Lakes Area Office with a copy of the hearing request. If you have not received a copy of the report of investigation and notification concerning your appeal rights within 180 calendar days from the date on which you filed your formal complaint, you may request a hearing by writing directly to the EEOC District Office shown above, with a copy to the Sr., EEO Complaints Investigator.

If you are dissatisfied with the Postal Service's final agency decision where there has been no hearing, or with the Postal Service's final action on the decision of an EEOC Administrative Judge following a hearing, you have certain appeal rights. You may appeal a final agency decision where no hearing has been held to the Office of Federal Operations of the EEOC, at the address shown below, within thirty- (30) calendar days of the date of your receipt of the final agency decision, or you may file a civil action in

Issues to be Investigated
Page 2 of 4

- 3 -

the appropriate U.S. District Court within ninety- (90) calendar days of the date of your receipt of the final agency decision. You may also appeal a final action by the Postal Service implementing a decision of an EEOC Administrative Judge following a hearing to the Office of Federal Operations of the Equal Employment Opportunity Commission (EEOC) within thirty- (30) calendar days of the date of your receipt of that final action or you may file a civil action in an appropriate U.S. District Court within ninety- (90) calendar days of the date of your receipt of the final action. Finally, you may respond to an appeal by the Postal Service in connection with its final action not to implement a decision of an EEOC Administrative Judge following a hearing or you may file a civil action in an appropriate U.S. District Court within ninety- (90) calendar days of the receipt of the final action and appeal.

***Any appeal to the EEOC should be sent to the following address:***

> **Office of Federal Operations**
> **Equal Employment Opportunity Commission**
> **Post Office Box 19848**
> **Washington, DC  20036-9848**

*You must send the Manager, EEO Compliance and Appeals a copy of your appeal and any supporting documentation. In addition, you must provide proof to the Office of Federal Operations that you have sent the Manager, EEO Compliance and Appeals a copy of your appeal and any supporting documentation.*

You may file a civil action in an appropriate U.S. District Court after the expiration of the 180 calendar days from the date on which you filed this formal complaint if the Postal Service has not issued a final agency decision on your complaint or if no final action has been taken on a decision by an EEOC Administrative Judge. If you initially choose to file an appeal to the Office of Federal Operations of the EEOC, you may file a civil action in an appropriate U.S. District Court within ninety- (90) calendar days from the date of your receipt of the decision of the Office of Federal Operations. You may also file a civil action in an appropriate U.S. District Court if you have not received a decision on your appeal within 180 calendar days of the date on which you filed your appeal with the Office of Federal Operations.

Arturo Beruman
Sr., EEO Complaints Investigator

8/19/05
Date

# CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that the foregoing document, *Acceptance of Complaint*, was received within five- (5) calendar days after it was mailed. I certify that on this date, this document was mailed to the following parties:

Tatanina S. Evans
2939 Shelly Lane
Aurora, IL 60504-5892

Anita Hatcher
Representative
211 N. Kaspar Avenue #104
Arlington Heights, IL 60005-1270

Manager, EEO Dispute Resolution
Northern Illinois District

Stephanie Darnaby
NEEOISO Analyst
Tampa, FL

_____          _8/9/05_____
Arturo Berumen                          Date
Sr., EEO Complaints Investigator
Great Lakes Area Office - USPS
244 Knollwood Drive, 2nd Floor
Bloomingdale, IL 60117-3010

Issues to be Investigated
Page _4_ of _4_____

 **UNITED STATES**
**POSTAL SERVICE**

April 21, 2005

To:     Name Tatanina Evans
        SSN: 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
        Title Regular City Carrier
        Address 2923 Shelly Ln.
               Aurora, IL. 60504

Subject:  Emergency Placement in Off-Duty Status

You are hereby notified that you have been placed in an off duty status without pay effective (04-21-05 @ 07:30 AM, on April 21, 2005, and you will continue in this status until you are advised otherwise. The reason for this action is that it has come to our attention that you allegedly threatened and assaulted a fellow employee on the evening of April 20, 2005. This action is being taken to give management the opportunity to investigate your threatening conduct.

You have the right to file a grievance under the Grievance/Arbitration procedures set forth in Article 15 of the National Agreement within 14 days of your receipt of this letter.

Bruce Jelinek
Manager, Customer Services
Elgin Post Office

Exhibit ___4___
Page ___I___ of ___I___



UNITED STATES POSTAL INSPECTION SERVICE

CHICAGO DIVISION

Date: May 5, 2005

Reference: Case No. 0281-1526525-ASLT (1)

Subject: Tatanina Evans, SSN: 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; Full-Time Regular Carrier, Elgin Postal Annex, 195 S. Randall Road, Elgin, IL 60123.

Bruce Jelinek, Manager
Elgin Postal Annex
195 S. Randall Road
Elgin, IL 60120

## RESTRICTED INFORMATION

The United States Postal Inspection Service (USPIS) recently conducted an investigation into the conduct of Tatanina S. Evans, Full-Time Regular Mail Carrier, Elgin Postal Annex. The attached Investigative Memorandum and exhibits are submitted for your consideration and decision as to whether disciplinary action is warranted.

Please advise me, in writing within 30 days, of your disciplinary decision in this matter. If you decide to take disciplinary action, please furnish me a copy of the letter to the employee and your final decision letter. If arbitration or Merit Service Protection Board (MSPB) hearings are required, I will be available to testify concerning this investigation. Please advise me at least two weeks in advance of any scheduled hearings. Additionally, if your original decision is subsequently modified in any way as the result of a grievance, appeal or arbitration proceeding, please advise me of the final results of the action taken.

The Investigative Memorandum is "Restricted Information". All Inspection Service reports are furnished on an official need to know basis and must be protected from dissemination that may compromise the best interest of the U.S. Postal Service.

Exhibit ___5___
Page ___1___ of _19_

- 2 -

Thank you for your cooperation in this matter.  If you have any questions or need additional information, please contact me at (630) 260-5344.

Sincerely,

Kevin S. O'Brien
Postal Inspector

Enclosure: Investigative Memorandum

Cc:    Diane Tindle, Postmaster, Elgin Illinois
       Carol Deluttri, Manager, Labor Relations

Exhibit  5
Page  2  of 19

UNITED STATES POSTAL INSPECTION SERVICE

CHICAGO DIVISION

May 5, 2005
0281-1526525-ASLT (1)

Our Ref: KSO

Subject: ELGIN, IL: Investigation of the Conduct of Tatanina S. Evans, City Carrier.


## INVESTIGATIVE MEMORANDUM


1. This investigation began following allegations made by Carla Williams, City Carrier at the Elgin Postal Annex to Bruce Jelinek, Manager, Elgin Postal Annex on April 21, 2005.    The following is what Williams provided in a written statement to Jelinek **(Exhibit 1)**:

> Williams stated that on April 20, 2005, she returned to the post office when she realized she still had the keys to her postal vehicle.   She was hanging up her keys when Tatanina Evans yelled out, "hey you put a scratch on my car", Williams denied scratching Evans car.  Williams stated Evans repeated this several times and said that if she (Williams) ever touched Evans car again she would slap her around.

> Williams stated that she was standing by Mr. Thallers office waiting to see him when Evans walked by and bumped Williams with her arm and continued towards the cage.

> Williams said Evans clocked out and before leaving said "and let that be a warning to you, that if you ever go near my car we'll just go out here and I'll slap you around"  Williams said she told Evans three times not to threaten her before Mr. Thaller came out of his office.  Williams stated that Evans said good Mr. Thaller is out here and then repeated what she had just said to Williams.

2. Ryan Thaller, Supervisor, Customer Service provided Bruce Jelinek with a written statement containing the following **(Exhibit 2)**:

> At approximately 4:45 pm he was in his office when he heard Carla Williams shout "Don't threaten me!" he walked out of his office and saw Carla Williams standing by the outgoing

CAROL STREAM DOMICILE
P O Box 87937
CAROL STREAM IL 60188-7937
TELEPHONE: (630) 280-5677
FAX: (630) 260-5332

Exhibit    5
Page    3   of 19

- 2 -

Elgin, Illinois                                    0281-1526525-ASLT (1)

> mail, again saying "Don't threaten me!"  He turned and saw
> Tatanina Evans. Thaller stated that when Evans saw him she
> said "I ain't threatening you! Ryan can hear this.  I'm telling
> you that if my car gets another mark, it's you and me outside.
> I'm gonna let this one slide though."

> Thaller stated that Evans then exited the building and he
> followed calling to her twice before she stopped.  Thaller told
> Evans she cannot threaten people and asked if Evans
> understood.  Thaller stated Evans said she understood.

3. On April 27, 2005, I interviewed Carla Williams and Ryan Thaller. Neither
provided information not already in their written statements to Bruce Jelinek.

4.  Sharlene Merwin, City Carrier, provided Bruce Jelinek with a written
statement containing the following (**Exhibit 3**):

> On Wednesday April 20th at approximately 4:45 pm, Merwin
> heard a lady say to Carla Williams that Carla had put a dent in
> her car and that Carla said she had not.  Merwin said the other
> lady said she would slap her across her face.

5. On April 27, 2005, I interviewed Sharlene Merwin, City Carrier. The
Memorandum of Interview with Merwin is included as **Exhibit 4**. Merwin
provided the following information in addition to the statement she provided to
Bruce Jelinek:

> Merwin stated that she recognized the lady talking to Carla
> Williams but at the time did not know her name.  Merwin later
> found out that her name was Tatanina Evans.  Merwin stated
> Evans later apologized to her for her outburst.  Merwin
> observed no physical contact between Evans and Williams.

6. Kim Ranney, City Carrier, provided Bruce Jelinek with a written statement
containing the following (**Exhibit 5**):

> On Wednesday April 20th, Ranney heard Tatanina Evans say to
> Carla Williams that Carla had marked her car. Ranney heard
> Evans state if Carla marked her car again she'd slap her.

7.  On April 28, 2005, I interviewed Kim Ranney, City Carrier. The
Memorandum of Interview with Ranney is included as **Exhibit 6**. Ranney
provided the following information in addition to the statement she provided to
Bruce Jelinek:

Exhibit ___5___
Page __4__ of _19_

- 3 -

Elgin, Illinois                                    0281-1526525-ASLT (1)

> Ranney stated she heard Williams telling Evans to quit
> threatening her.    Evans apologized to Ranney.    Ranney
> observed no physical contact between Evans and Williams.

8. On May 3, 2005, Tatanina Evans provided a written statement signed and
sworn to Inspector Niko and myself, in the presence of her union rep Michael
Losurdo. Evans sworn statement is provided as **Exhibit 7.** Evans provided the
following information in her written statement.

> Evans stated she was sitting in her car at 7:15 am when Carla
> Williams backed her vehicle into the parking space next to her.
> Evans rolled down her drivers side window a tapped on
> Williams driver side window.  Evans stated she told Williams
> she was parked pretty close.  Evans stated Williams suggested
> she move her car over or park somewhere else.  Evans said
> she did not reply to Williams and went into the Post Office.

> After carrying her route Evans returned to the Post Office a
> 4:45 pm and noticed a scratch on her car.   Evans went into
> the Post Office to put away her mail and accountables and
> saw Carla Williams talking to Kim Ranney.  Evans stated she
> approached Williams and asked Williams why did you scratch
> my car? Evans stated Williams replied that she did not scratch
> Evans car.

> Evans said she asked Williams, "would I be wrong if I slap your
> ass in your face like you scratched my car?"  Evans said
> Williams replied, "Are you threatening me?"

> Evans stated she tossed her outgoing mail in the gurney and
> proceeded to put her accountables away.  Evans said Williams
> was standing across from the supervisors office and Evans told
> Williams, I don't have time, but the next time she needs to be
> more careful or I will kick her ass.  Evans stated Williams
> repeated, are you threatening me? Evans said Ryan came out
> of his office as Evans said I will kick your ass.

> Evans stated she walked out of the office with Ryan telling her
> she can't threaten people.

Exhibit ___5___
Page ___5___ of _14_

- 4 -

Elgin, Illinois                              0281-1526525-ASLT (1)


9. On May 3, 2005, Inspector Niko and I interviewed Tatanina Evans, City
   Carrier. The Memorandum of Interview with Evans is included as **Exhibit 8.**
   Evans provided the following information not provided in her written
   statement.

> Evans stated she apologized to Sharlene Merwin and Kim
> Ranney. Evans stated she never had any physical contact with
> Carla Williams.


*Kevin O'Brien*

Kevin S. O'Brien
Postal Inspector
Chicago Division



Attachments:        Described Exhibits

Exhibit __5__
Page __6__ of __19__

- 5 -

Exhibits:

1. Photocopy, Statement of Carla Williams provided to Bruce Jelinek, Manager Elgin Postal Annex.

2. Photocopy, Statement of Ryan Thaller, Supervisor, provided to Bruce Jelinek, Manager, Elgin Postal Annex.

3. Photocopy, Statement of Sharlene Merwin provided to Bruce Jelinek, Manager, Elgin Postal Annex.

4. Photocopy, Memorandum of Interview of Sharlene Merwin, conducted on April 27, 2005.

5. Photocopy, Statement of Kimberly Ranney provided to Bruce Jelinek, Manager, Elgin Postal Annex.

6. Photocopy, Memorandum of Interview of Kimberly Ranney, conducted on April 28, 2005.

7. Photocopy, Statement of Tatanina Evans provided to Inspectors Niko and O'Brien on May 3, 2005.

8. Photocopy, Memorandum of Interview of Tatanina Evans conducted on May 3, 2005.

Exhibit    5
Page    7 of 19

To: Bruce, Ryan, Jeff                                    4-20-05

I Carla Williams had returned to work on 4-20-05 to return my truck keys that I mistakenly had taken home. I hung then up on the peg rake. When T Evans yelled out to me "Hey you put a scratch on my car." I said to her that I did not put a scratch on her car. She still approached me. I had backed up from her. Mrs Evans kept repeating herself with "you put a scratch on my car." I explained to Mrs Evans that I could not have done that because I had gotten out of my van from the passager side, and when I went home, I went in my van on the passager side. Mrs Evans then told me " that if ever I touch" her car again that she would slap me around." She was very loud, Mrs Evans then called me a bitch and walked back to "case" saying "She's just like all the other Bitches!" I was standing by Mr Thallers office waiting to see him. Mrs Evans had left her cart walked towards the time clock and then walked towards me (by Mr Thallers office) as she passed me Mrs Evans bumps into with her arm, an continued to walk towards the cage and mumbled something as she walked. Mrs Evans finished up punched out to leave and as she was leaving, Mrs Evans opened the door to go out and turn around and said to me "and let that be a warning to you" that if you ever go near my car, "will just go out here (outside) and I'll slap you around." I asked Mrs Evans not to threaten me (x3) (it was loud) before Mr Thaller came out of his office.

Exhibit 7 5
Page 8 of 19

EXHIBIT No. 7

Mrs Evans then said "Good Mr Thaller is out here
now he can here. Mrs Evans just repeated everything
she had said to me to Mr Thaller. Mrs Evans then
walked out the door with Mr Thaller for swing
Mrs Evans

Mrs Carla B Williams

Exhibit  5
Page  9 of 19

EXHIBIT No.  1

## NOTES CONCERNING INTERACTION WITNESSED BETWEEN C. WILLIAMS & T. EVANS ON 04-20-05 AT THE ELGIN ANNEX 60123.

The time was approximately 4:55 p.m.

I was in my office concluding a 60 day review with probationary PTF employee Mary Deegan when I heard Carla Williams repeatedly shout, "Don't threaten me!" I walked out of my office to see what the problem was. Carla Williams was standing leaning up against the gaylord of outgoing mail about 10 feet in front of my office looking at the employee door to the west of my office door, again saying "Don't threaten me!". I turned to my right and saw Tatanina Evans, with one hand on the door handle, looking toward Carla Williams. Both Williams and Evans were off the clock. Williams had returned because she had inadvertently taken keys home. Evans had just punched out and was at the door, about to leave.

When Evans saw me she stated to Williams (to the best of my recollection) "I ain't threatening you! (pointed to me in my door way) Ryan can hear this. I'm telling you that if my car gets another mark, it's you and me outside. I'm gonna let this one slide though."

Evans then turned around and walked out the door. I caught up with her outside. I called her name 2x and she ignored me and kept walking. Finally I said, "Tatanina, I know you can hear me. Stop." I told Evans (based on what I had just heard) that she cannot threaten people. I asked her if she understood what I had just said. She stated she understood. She did not object to my classification of her statement as a threat, nor did she deny she had made any threats.

I asked Evans how she knew that Williams had hit her personal vehicle. Evans responded by stating, "It's a mark high enough that a van had to make. (points to a green van license # 56374 in route 2358's parking spot and continues) "this s'nit is hers (William's)"
I said to Evans, "Did you see Carla hit your car?"
Evans. "No, but my car is new....."
Thaller. "What color is your car?"
Evans. "Gold, and the mark is high like from a van."
Evans turned and walked away.

I entered the Annex. Carla Williams was still leaning against the gaylord. It was approximately 5 p.m. I asked Williams. "Did you scratch Tatanina Evans's gold car?"
Williams: "No."

Exhibit __5__
Page __16__ of __19__

EXHIBIT No. __2__

I asked Williams to describe how this entire situation had unfolded because I got involved after things had obviously escalated. Williams told me that in the morning, as the carriers were arriving, Evans had pulled in to a parking spot first, with Williams arriving shortly thereafter. Williams told me Evans's car was parked on the line.

Williams told me that she asked Evans to move her car and that Evans said "No." Subsequently Williams had to exit her vehicle via the passenger door because she was oo close to Evans's car. When she went home for the day, Williams told me that she also had to enter her vehicle via the passenger side due to her vehicle and the car of Evans being so close together.

I asked Williams for a statement. She seemed visibly shaken and I recall she asked me how to spell five different, very common words. I was surprised that she was having trouble with the statement. I asked her if she was upset. She responded that she was scared, worried that Evans would confront her. Her exact statement was that she feared Evans might "pull a knife on her" if they were alone outside.

*Ryan Thaller*

Ryan Thaller
Supervisor. Customer Service
Elgin IL 60123
04-20-05

Exhibit ___5___
Page __11_ of _19_

EXHIBIT No.___2___

On wed 4/20 app. 4:45 p.m.
I  el heard one lady state to
another that she put a dent in her
car. Carla at that time said no
she had not.

The other lady then stated
To say to Carla she would slap
her across her face, and said out
loud - "she was sick of all these
Bitches"  in this place"

Sharlene Moreno

## MEMORANDUM OF INTERVIEW

| | | |
|---|---|---|
| CASE NUMBER | : | 0281-1526525-ASLT (1) |
| PERSON INTERVIEWED | : | Sharlene Merwin |
| PLACE OF INTERVIEW | : | 195 S. Randall Road<br>Elgin, IL |
| DATE OF INTERVIEW | : | April 27, 2005 |
| INTERVIEWED BY | : | Kevin O'Brien |

On April 27, 2005, I interviewed Sharlene Merwin, City Carrier Elgin Postal Annex in regards to the April 20th altercation between carriers Carla Williems and Tatanina Evans. Merwin provided the following information:

Merwin stated she was at her case at about 4:45 pm when she heard arguing about a scratch on a car. Merwin said Evans accused Williams of scratching her car and that Williams denied scratching Evans car. Merwin stated she heard Evans say "I'm going to slap you across your face"

Merwin was asked why she didn't refer to Evans in her written statement. Merwin stated she recognized the carrier but at the time did not know her name. Merwin said she later found out the carriers name was Tatanina Evans.

Merwin stated that Evans apologized to her and said she was sick of all these bitches in here.

Merwin stated she never saw any physical contact between Carla Williams and Tatanina Evans.

Kevin O'Brien

Kevin S. O'Brien
Postal Inspector

Exhibit _5_
Page _13_ of _19_

EXHIBIT No. _4_

On wednesday 4.20.05
Carla Williams was changing
up her postal vehicle Keys
and Jatanina Evans
walked out to her case +
started yelling at Carla
not to put another mark
on her Car — the
interaction went back +
forth Jatanina said
if Carla marked her
car again shed slap
her.

Kimberly A Ramsey/

Exhibit **5**
Page _19_ of _19_

EXHIBIT No. __5__

MEMORANDUM OF INTERVIEW

CASE NUMBER                :        0281-1526525-ASLT (1)

PERSON INTERVIEWED         :        Kimberly Ranney

PLACE OF INTERVIEW         :        195 S. Randall Road
                                    Elgin, IL

DATE OF INTERVIEW          :        April 27, 2005

INTERVIEWED BY             :        Kevin O'Brien

---

On April 28, 2005, I interviewed Kimberly Ranney, City Carrier Elgin Postal Annex in regards to the April 20th altercation between carriers Carla Williams and Tatanina Evans. Ranney provided the following information:

Ranney stated that Carla Williams was hanging up her postal vehicle keys when she heard Tatanina Evans yelling at Williams that Williams had put a mark on her car. Ranney said Williams denied marking Evans car.

Ranney stated she left to unload her CRV. Ranney said when she returned Evans apologized to her saying "I'm sorry Kim, I'm tired of all these bitches I just want to slap them."

Ranney later heard Evans tell Williams that if it happened she would slap Williams.

Ranney stated she never saw any physical contact between Carla Williams and Tatanina Evans.

*Kevin O'Brien*

Kevin S. O'Brien
Postal Inspector

Exhibit __5__
Page __15__ of __19__

EXHIBIT No. __6__

April 20, 2005

    I Satarina Evans was sitting in my parked car @ 7:15 having a cup of coffee. When Carla Williams bagged her caravan into parking space next to me (my drivers side) Once she was parked I rolled my window down tapped her window to let her know she was parked pretty close. Carla replied "back your car up and move over or move to another part" I didn't reply I just got of my car and had to turn side ways between those cars to get pass.

@ 4:45pm I returned back to the space after my route was completed, Carla Williams was already gone from work I noticed a scratch on my car. I continued back to space to put my mail and accountables away. I noticed Carla standing in space speaking w/ Kim Rainey. I then approached her, asking "why did you scratch my car" she replied "I didn't scratch your car"

I then asked her would it be wrong if I slap your ass in your face like you scratched my car?

She replied "Are you threatning me"

Exhibit 5
Page 16 of 19

I then proceeded to toss my out going mail in the gurree and then

Headed to the case but accountant away. Went to my case got my purse. Walk to the clock + punched ET.

@ Clms point she is standing try the outgoing mail across from Supervisors office.

I then told her I dont have Clmi. But the next time she needs to be more careful or I will Kick her ass about my shit.

As im speaking this saying Can you directing me clouding So Ryan can hear her @ that moment she come out of the office as im saying – (Kick your ass about my shit)

I walked out of the Post Office doors to Ryan calling my name telling me I cant threaten no one. I then told him we had words about my brand new car that morning. Ryan asked what color was my car and proceeded into the office. Nothing else was said between Carla and I.

Morris
5/3/05

Subscribed and sworn before me this ___ 3rd ___ day of ___ May ___, 2005.

_____
Postal Inspector

STATE OF: Illinois )
                              )ss
COUNTY OF: KANE )

Exhibit 5
Page 17 of 19

EXHIBIT NO. 7

MEMORANDUM OF INTERVIEW

CASE NUMBER          :     0281-1526525-ASLT (1)

PERSON INTERVIEWED   :     Tatanina Evans

PLACE OF INTERVIEW   :     195 S. Randall Road
                           Elgin, IL

DATE OF INTERVIEW    :     April 27, 2005

INTERVIEWED BY       :     Kevin O'Brien

---

On May 3, 2005, Inspector Niko and I interviewed Tatanina Evans, City Carrier Elgin Postal Annex in regards to the April 20th altercation between carriers Carla Williams and Tatanina Evans. Evans was accompanied by her Union representative Michael Losurdo. Evans provided the following information:

Evans stated that she was parked in her car at 7:15 am having a cup of coffee when Carla Williams backed into the space next to her. Evans rolled down her window and tapped on Carla Williams' driver side window telling Williams that she was too close. Evans said Williams suggested that Evans back up and mover over or find another space. Evans said she squeezed out of her car but did not say anything. Evans stated she went inside and punched in.

Evans stated she returned to the office a 4:45 pm and noticed a mark on her car and that Williams vehicle was gone. Evans said she went into the office and back to her case. Evans said she then saw Williams talking to Kim Ranney. Evans stated she asked Williams why she hit her car. Evans stated that Williams denied hitting Evans car. Evans stated to Williams "would I be wrong if I slapped your face like you scratched my car"

Evans stated Williams was standing by the outgoing mail gurney and that she (Evans) threw her mail into the gurney and continued to the cage to return her accountables. Evans stated she made no contact with Williams.

Evans said she punched out and before she left told Williams that you need to be more careful where you park your car. Evans said she told Williams the next time be more careful because I will would beat your ass about my shit. Evans stated that Ryan Thaller came out of his office when she made the last comment.

Exhibit __5__
Page _18_ of _19_

EXHIBIT No. __8__

-2-

Evans stated she walked out of the office with Thaller calling after her.  Evans said Thaller told her she couldn't threaten people like that.  Evans stated she understood and told Thaller that she was upset about her car and that she and Williams had words that morning.  Evans stated Thaller asked her what color her car was, she replied gold and that Thaller then went back inside.

Evans stated that she apologized to Sharlene Merwin and Kim Ranney.

*Kevin O'Brien*

Kevin S. O'Brien
Postal Inspector

Exhibit __5__
Page _19_ of _19_

EXHIBIT No. __8__

 **UNITED STATES**
**POSTAL SERVICE**

May 26, 2005

Tatanina S. Evans
SSN: 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
City Carrier, Full-Time
2939 Shelly Lane
Aurora, IL 60504-5892

SUBJECT: Notice of Removal

You are hereby notified that you will be removed from the Postal Service. The effective date of this removal will be determined at a later date. The reasons for this removal are:

**CHARGE: IMPROPER CONDUCT**

On April 20, 2005, at approximately 4:45 PM, you returned to the Post Office after having completed your route. You noticed a scratch on your car and proceeded into the office. You noticed Carla Williams standing in the office speaking with another carrier, Kim Ranney. You approached Ms. Williams and asked her why she scratched your car. Ms. Williams denied scratching your car. You then stated to her, "Would I be wrong if I slap your ass in your face like you scratched my car?" Ms. Williams replied, "Are you threatening me?" You then proceeded to put your out-going mail in the designated location. You put away some equipment and cleared your accountables, then punched out. You saw Ms. Williams standing across from the supervisor's office and told her, "I don't have time, but the next time you need to be more careful or I will kick your ass about my shit." You then left the Post Office. The preceding details and statements were taken directly from your own written statement regarding the incident. Your statements generally agree with the statements of witnesses to the events.

According to Ms. Williams, you also bumped into her with your arm and as you were leaving the building you stated, "and let that be a warning to you, if you ever go near my car we'll just go out here and I'll slap you around."

The Postal Service and the National Association of Letter Carriers agree that there will be no excuse for, and no tolerance of, harassment, intimidation, threats, or bullying by anyone.

The Employee and Labor Relations Manual (ELM) section 665.16 reads: "Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal employees be honest, reliable, trustworthy, courteous, and of good character and reputation." The same section further reads: "Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service." The section also reads: "Employees are expected to maintain harmonious working relationships and not to do anything that would contribute to an unpleasant working environment." ELM section 665.24 reads: "The Postal Service is committed to the principle that all employees have a basic right to a safe and humane working environment. In order to ensure this right, it is the unequivocal policy of the Postal Service that there must be no tolerance of violence or

Exhibit _6_
Page _1_ of _2_

threats of violence by anyone at any level of the Postal Service. Similarly, there must be no tolerance of harassment, intimidation, threats, or bullying by anyone at any level. Violation of this policy may result in disciplinary action, including removal from the Postal Service." You have failed to meet these expectations. You are therefore charged with improper conduct.

This charge is of such an egregious and serious nature as to warrant your removal from the Postal Service, despite your record of previous discipline. However, you do have the following elements as part of your past record:

On December 24, 2004 you were issued a fourteen (14) day suspension for Failure to Maintain a Regular Schedule.
On October 15, 2004 you were issued a seven (7) day suspension for Failure to Maintain a Regular Schedule.
On December 29, 2003 you were issued a Letter of Warning for Failure to Maintain a Regular Schedule.

You have the right to file a grievance under the Grievance/Arbitration procedures set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD. The extent of documentation necessary to support your back pay claim is explained in the ELM, Section 436. (Copy attached)


_____                          _____
Ryan Thaller                                      Concurred by Bruce Jelinek
Supervisor, Customer Services                     Manager, Customer Services

Date  MAY 31 2005                                 Date  MAY 31, 2005


I received the original of this letter on _____

Signature_____  Time_____

2

Exhibit    6
Page    2   of   2



**DISPUTE RESOLUTION TEAM**


**UNITED STATES**
**POSTAL SERVICE**

# STEP B DECISION

NALC

| | | | |
|---|---|---|---|
| **Step B Team:** | Smith & Miller | **Decision:** | RESOLVED |
| | | **DRT Tracking Number:** | 5090623 |
| | | **USPS Number:** | J01N-4J-D05141331 |
| | | **Grievant:** | Tatanina S. Evans |
| | | **Branch Grievance Number:** | E-011-05 |
| | | **Branch Number:** | 4739 |
| **District:** | NID | **Installation:** | Elgin |
| | | **Delivery Unit:** | Main Post Office |
| | | **State:** | IL |
| | | **Date Step A Initiated:** | 07/06/2005 |
| | | **Step A Meeting Date:** | 08/09/2005 |
| | | **Date Received at Step B:** | 08/17/2005 |
| | | **Step B Decision Date:** | 09/06/2005 |
| | | **Issue Code:** | 65.0200 |

ISSUE:
Did management violate Article 16 of the National Agreement when they issued the grievant a Notice of Removal and if so, what is the proper remedy?

DECISION:
The Dispute Resolution Team has **RESOLVED** this grievance by determining that the Notice of Removal was issued for just cause and the Postmaster and his or her designee may set the date of the removal at which time the grievant will be terminated from the Untied States Postal Service.

EXPLANATION:
The grievant was issued a Notice of Removal for Improper conduct. The letter states that the grievant made threatening remarks toward a fellow employee and alleges that the grievant bumped the same fellow employee. The removal cited a 14-Day Suspension, a 7-Day Suspension and a Letter of Warning as past elements of the grievant's discipline record.

The union contended that the rule is not equitably enforced and that at the Formal Step A management stated that the grievant was being removed for being loud and confrontational on the workroom floor.

Management contended that the removal was issued for just cause.

The JCAM on pages 16-1 to 16-3 talks about the principles of just cause:
    • **Is there a rule?** If so, was the employee aware of the rule? Was the employee forewarned of the disciplinary consequences for failure to follow the rule? It is not enough to say "Well, everybody knows that rule," or, "We posted that rule 10 years ago." You may have to prove that the employee should have known of the rule. Certain standards of

Exhibit ___8___
Page ___2___ of ___4___

conduct are normally expected in the industrial environment and it is assumed by arbitrators that employees should be aware of these standards. For example, an employee charged with intoxication on duty, fighting on duty, pilferage, sabotage, insubordination, etc., may be generally assumed to have understood that these offenses are neither condoned nor acceptable, even though management may not have issued specific regulations to that effect.

• **Is the rule a reasonable rule?** Management must make sure rules are reasonable, based on the overall objective of safe and efficient work performance. Management's rules should be reasonably related to business efficiency, safe operation of our business, and the performance we might expect of the employee.

The ELM, on page 692, speaks of violent and/or threatening behavior:

### 665.24 Violent and/or Threatening Behavior

The Postal Service is committed to the principle that all employees have a basic right to a safe and humane working environment. In order to ensure this right, it is the unequivocal policy of the Postal Service that there must be no tolerance of violence or threats of violence by anyone at any level of the Postal Service. Similarly, there must be no tolerance of harassment, intimidation, threats, or bullying by anyone at any level. Violation of this policy may result in disciplinary action, including removal from the Postal Service.

The DRT finds that these rules are reasonable.

The JCAM on pages 16-1 to 16-3 talks about the principles of just cause:

• **Is the rule consistently and equitably enforced?** A rule must be applied fairly and without discrimination. Consistent and equitable enforcement is a critical factor, and claiming failure in this regard is one of the union's most successful defenses. The Postal Service has been overturned or reversed in some cases because of not consistently and equitably enforcing the rules. Consistently overlooking employee infractions and then disciplining without warning is one issue. If employees are consistently allowed to smoke in areas designated as *No Smoking* areas, it is not appropriate suddenly to start disciplining them for this violation. In such cases, management loses its right to discipline for that infraction, in effect, unless it first puts employees (and the unions) on notice of its intent to enforce that regulation again. Singling out employees for discipline is another issue. If several employees commit an offense, it is not equitable to discipline only one.

The union contended that these rules are not equitably enforced within this installation. The DRT did not find that any of the comparison behaviors were similar to that of the grievant who made credible threats of bodily harm toward a fellow employee. The DRT did not find that the union provided any evidence that any other employee in this office has made a credible threat of bodily harm toward another employee; therefore, the DRT found that this rule has been equitably enforced.

The JCAM on pages 16-1 to 16-3 talks about the principles of just cause:

• **Was the severity of the discipline reasonably related to the infraction itself and in**

Exhibit ___8___
Page ___3___ of ___4___

line with that usually administered, as well as to the seriousness of the employee's past record? The following is an example of what arbitrators may consider an inequitable discipline: If an installation consistently issues 5-day suspensions for a particular offense, it would be extremely difficult to justify why an employee with a past record similar to that of other disciplined employees was issued a 30-day suspension for the same offense. There is no precise definition of what establishes a good, fair, or bad record. Reasonable judgment must be used. An employee's record of previous offenses may never be used to establish guilt in a case you presently have under consideration, but it may be used to deter-mine the appropriate disciplinary penalty.

The DRT finds that this behavior is sufficient enough to have warranted a skip in progression, but in this case that was not necessary as this was progressive in nature. The fact is that this behavior is so egregious that a removal may have been found to be issued for just cause, even if issued to an otherwise exemplary employee. It must be stressed to all of the employees that these types of behaviors are not to be tolerated.

Based on the evidence in the case file the DRT Team determined that the grievant fully admits to stating the following toward a fellow employee:

"Would I be wrong if I slap your ass face like you scratched my car?" and "I don't have time, but the next time you need to be more careful or I will kick your ass about my shit."

The fact is that these statements were made and that both of these statements refer to bodily harm. This cannot be tolerated by the United States Postal Service and standing alone is sufficient cause to result in removal from the United States Postal Service, as in this instant case.

The Dispute Resolution Team has **RESOLVED** this grievance by determining that the Notice of Removal was issued for just cause and the Postmaster and his or her designee may set the date of the removal at which time the grievant will be terminated from the Untied States Postal Service.


Edward J. Miller
**Step B Representative - USPS**

Daniel C. Smith
**Step B Representative - NALC**

cc:    **Step A Parties**
    **District Labor Relations**

**Area Labor Relations**
**National Business Agent**

Exhibit    8
Page  4  of  4

DATE: APRIL 23 2004

**SUBJECT: NOTICE OF REMOVAL**

TO:    JEROME QUALKENBUSH
        FULL TIME REGULAR CITY CARRIER
        SSN:
        ELGIN IL 60123-9995

YOU ARE HEREBY NOTIFIED THAT YOU WILL BE REMOVED FROM THE POSTAL SERVCE.
THE EFFECTIVE DATE OF THIS REMOVAL WILL BE DETERMINED AT A LATER DATE. THE
REASON FOR THIS REMOVAL IS:

**CHARGE: CONDUCT UNBECOMING A POSTAL EMPLOYEE**

ON 04-12-04 THE ASISSTANT MANAGER OF THE TOWNHOME COMMUNITY KNOWN AS
BURNHAM MILL (THE MILL) CALLED THE ELGIN POSTAL ANNEX TO INFORM
MANAGEMENT SHE HAD REASON TO BELIEVE YOU HAD URINATED ON THE FLOOR OF
THE 1245 FLEETWOOD BUILDING.
AT 1 P.M. ON 04-12-04 THE CUSTODIAL STAFF AT THE MILL CLEANED THE FLOOR OF THE
1245 FLEETWOD BUILDING. AT 1:45 P.M. THE FLOOR WAS STAINED WITH URINE. YOU HAD
COMPLETED DELIVERY TO 1245 FLEETWOOD WITHIN THOSE 45 MINUTES.
ADDITIONALLY. YOU WERE OBSERVED ZIPPING UP YOUR PANTS WHILE EXITING THE 1245
FLEETWOOD BUILDING.
0N 04-13-04. YOU ADMITTED TO URINATING ON THE FLOOR OF THE 1245 FLEETWOOD
BUILDING DURING AN INTERVIEW WITH YOUR NALC REPRESENTITIVE PRESENT.

YOU HAVE A RIGHT TO FILE A GRIEVANCE UNDER THE GRIEVANCE ARBITRATION
PROCEDURES SET FORTH IN ARTICLE 15 OF THE NATIONAL AGREEMENT WITHIN 14 DAYS
OF YOUR RECEIPT OF THIS NOTICE.

IF THIS ACTION IS OVERTURNED ON APPEAL. BACK PAY WILL BE ALLOWED. UNLESS
OTHERWISE SPECIFIED IN THE APPRPRIATE AWARD OR DECISION. ONLY IF YOU HAVE
MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT
NON-WORK PERIOD. THE EXTENT OF DOCUMENTATION NECESSARY TO SUPPORT YOUR
BACK PAY CLAIM IS EXPLAINED IN THE ELM. SECTION 436. (COPY ATTACHED)

RYAN THALLER
SUPERVISOR. CUSTOMER SERVICE
ELGIN IL 60123

BRUCE D. JELINEK
MANAGER. CUSTOMER SERVICE
ELGIN IL 60123

RECEIVED BY _REFUSED TO SIGN_ DATE _8:15 am  04-23-04_

WITNESS _____

Exhibit 9
Page 1 of 8



**UNITED STATES**
**POSTAL SERVICE**

Date: March 25, 2005

Subject: Notice of Removal

To: Desi Martin
SSN:
City Letter Carrier
Elgin, IL. 60120-9998

You are hereby notified that you will be removed from the Postal Service on April 30, 2005. The reason for this action is:

Charge 1 – Driving a Postal Vehicle with a Suspended License

Charge 2 – Failure to Report the Suspension of your Drivers License

On Friday, March 4, 2005, management was made aware that you might be driving without a valid driver's license. You were questioned by Postmaster Diane K. Tindle, and it was discovered that you in fact did not possess a valid driver's license. Arrangements were made in order for your route (2015) to get delivered. You then had a week of scheduled Annual leave and called the post office on Tuesday, March 15, 2005 and requested emergency annual leave for the week ending Saturday, March 19, 2005.

On your return to work Monday, March 21, 2005, I conducted an investigative interview with you pertaining to your suspended driver's license. I asked if you had in your possession a valid state driver's license and you said that you did not. I asked you when were you first aware that you did not have a valid drivers license and you responded by saying that you first lost it on January 17, 2004. You said that you were also stopped again on April 22, 2004, and at that time you were driving on a suspended license. I asked you when you first notified the Post Office that you did not possess a valid driver's license and after hesitating for a moment you said Friday, March 4, 2004 when the Postmaster asked you about it. When asked why you didn't inform management that your driver's license had been suspended you said that you were afraid of losing your job. Your responses are unacceptable.

The M – 41 Handbook, City Delivery Carrier's Duties and Responsibilities section 811.11 states: Be sure you are qualified to drive the vehicle assigned to you; maintain a valid state driver's license.

Section 811.12 states: Advise your immediate manager of suspension or revocation of your state license.

Section 812.2 states: Observe all traffic regulations prescribed by law. Rules applying to the public also apply to operators of Postal vehicles.

Handbook EL – 814 Postal employee's Guide to Safety, section X states in part: Only authorized personnel can operate Postal vehicles. You must have in your possession a valid state driver's license

Exhibit    9
Page    2    of    8

when operating a Postal vehicle or any vehicle when on Postal business. You must inform your supervisor immediately if your state driver's license is revoked or suspended.

This is not meant to be an exhausted list of the Postal rules and regulations you have violated.

By driving Postal vehicles on a suspended license you not only violated state laws, but you also subjected the Postal Service to potential liabilities, had you been involved in a vehicle accident. You also failed to be honest and trustworthy when you failed to report to your manager that your license had been suspended.

In addition the following elements of your past record have been considered:

> Letter of Warning issued April 10, 2004 – Failure to Maintain Regular Attendance

Your actions in this regard are of such a serious nature they warrant your removal from the Postal Service despite your prior disciplinary record.

You have the right to file a grievance under the Grievance/Arbitration procedures set forth in Article 15 of the National Agreement within 14 days of your receipt of this letter.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, _only if you have made reasonable efforts to obtain other employment during the relevant non-work period._ The extent of documentation necessary to support your back pay claim is explained in the ELM, Section 436. (Copy Attached)


Gregory S. Dusek
Supervisor, Customer Service

Diane K. Tindle          Postmaster
Concurring Official

I have received the original of this letter on _____Time_____

Signature _____

Attachment ELM 436    REFUSED TO SIGN
                      2/28/05
                      9:56 AM

Exhibit  9
Page  3  of  8

CUSTOMER SERVICES SUPERVISOR
ELGIN POST OFFICE

 UNITED STATES
POSTAL SERVICE

February 14, 2002

Express Mail, signature waiver# __ET903954235US__
CERTIFIED MAIL# __7000 0520 0017 7420 3886__

Notice of Removal

Mark Kamradt
Full Time Letter Carrier

You are hereby notified that you will be removed effective March 25, 2002. The reason(s) for this action is:

Charge: Unacceptable Conduct

On Tuesday, February 5, 2002, it was reported that you were observed by a female Elgin Postal employee, at approximately 07:50 a.m., at city route 57 letter case with your penis outside of your pants. This female employee was visibly upset and crying. She informed another employee, a union steward, of the incident. The incident was reported to supervision.

An investigative meeting relative to your conduct was held on February 5, 2002, at 10:30 a.m., of which you were in attendance. Included at this meeting were union representation and management officials. At this meeting, you admitted in front of Union President Mike Losurdo; Elgin Manager of Customer Service, Mike Westerman; and to William Ryan, Postmaster that you pulled your penis out of your pants. You stated that you were at your case when the incident occurred. When asked by William Ryan, "Did you pull your penis out of your pants?", you replied, "yes, I did". You further stated that "I had an itch". Your response is totally unacceptable. You were placed on emergency placement in an off duty status.

Postal employees are prohibited from engaging in notoriously disgraceful conduct (ELM Chapter 661.53). In addition, Postal employees are required to conduct themselves in a manner which reflects favorably upon the Postal Service. Postal employees are required to be courteous, of good character and reputation. Postal employees are expected to maintain satisfactory personal habits so as not to be obnoxious or offensive to other persons or to create unpleasant working conditions (ELM Chapter 666.2).

You have the right to file a grievance under the Grievance-Arbitration procedures set forth in Article 15 of the National Agreement within 14 days of your receipt of this letter.

ELGIN, IL 60120-9998

Exhibit ___9___
Page ___4___ of ___8___

- 2 -

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, ONLY IF YOU HAVE MADE A REASONABLE EFFORT TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD. The extent of documentation necessary to support your back pay is explained in the ELM, section 436 (attached).

_____                _____
Ryan Thaller                            Concurring Official
Customer Service Supervisor             WILLIAM A - RYAN
                                        POSTMASTER

I received the original of this letter on_____

Signature_____    Time_____

Exhibit    9
Page   5  of  5

 **UNITED STATES POSTAL SERVICE**

J-8

September 3, 2002

Subject:     Notice of Removal

To:          Mathew J. Garner
             Letter Carrier
             SSN

You are hereby notified that you will be removed from the US Postal Service effective Wednesday, October 9, 2002.

The reason(s) for this action are:

## CHARGE:  UNAUTHORIZED DELAY OF MAIL

On August 12, 2002, you were interviewed by the Postal Inspection Service regarding 2185 pieces of delayed mail that was discovered in your carrier satchel on Saturday August 10, 2002.

Your carrier satchel, which was left in the postal vehicle assigned to your route, contained the following pieces of mail:

- 566 pieces of mail that were scheduled for delivery on May 28th and 29th, 2002.
- 566 pieces of mail that were scheduled for delivery on June 4th and 5th, 2002.
- 567 pieces of mail that were scheduled for delivery on July 2nd and 3rd, 2002.
- 486 pieces of Standard A mail from Lincoln Insurance Agency.

All of this mail was addressed to customers on your assigned route, Route 21. During your interview with the Postal Inspection Service, you admitted that you had placed this mail in your satchel and had failed to deliver it on its scheduled dates.

Subsequent to your interview with the Postal Inspection Service, I also questioned you regarding this mail. You indicated that you were having marital problems and were attending counseling sessions that were scheduled on Tuesday evenings. You stated that you delayed this mail on Tuesdays to complete your assignment on time. You further indicated that you intended to deliver this mail later. You were unable to offer any explanation for your failure to notify management of your inability to complete your assignment on each of these days. You were placed in an emergency off-duty status pending further investigation.

Exhibit _9_
Page _6_ of _8_

- -2

On approximately August 22, 2002, I received an Investigative Memorandum from the Postal Inspection Service regarding your conduct. Included in the Investigative Memorandum was a copy of another Investigative Memorandum, dated December 29, 1993, detailing an incident in which you engaged in similar behavior during previous postal employment in Chicago, IL.

On August 28, 2002, I questioned you regarding this additional information. You indicated that you were working as a transitional employee (TE) during 1993. You indicated that this incident occurred at the same time as your term was ending, therefore, your term ended without you ever receiving a removal notice or Form 50 from the Postal Service indicating that you were removed.

Also included in the Investigative Memorandum is PS Form, 8139, Your Role in Protecting the Security of the United States Mail, which you signed on September 25, 1997. Your signature acknowledged, in part, "I fully understand that it is a crime, punishable by fine or imprisonment, or both, to knowingly or willfully obstruct or delay the mail". Additionally, I find your 1993 written statement to the Postal Inspection Service to further illustrate your awareness of your responsibilities in this regard.

While the 1993 incident is not at issue here, nor was it considered in arriving at this decision, I find your actions of unauthorized delay of 2185 pieces of mail, sufficient to warrant your removal from the Postal Service despite your prior disciplinary record. Your reason(s) for delaying this mail over several weeks is unacceptable and insufficient to mitigate such serious misconduct.

The mishandling of mail, such as this, strikes at the heart of the Postal Service's mission to provide timely, accurate, delivery service. This type of misconduct lessens customer's confidence in the U.S. Postal Service. Your actions have violated postal policy and have breached the trust necessary in the employer/employee relationship.

On August 12, 2002, you were placed in an emergency off duty status in accordance with Article 16.7 of the National Agreement. You will remain in this status until the effective date of your removal from the Postal Service.

You have the right to file a grievance under the Grievance/Arbitration Procedures set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

Exhibit    9
Page    7 of 8

- -3

If this action is overturned on appeal, back pay will be allowed unless otherwise specified in the appropriate award or decision, **ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD.** The extent of documentation necessary to support your back pay claim is explained in the ELM, Section 436." (Copy Attached)


*Eric Selin*

Eric Selin
Supervisor, Customer Services
Elgin, IL


*W.a. Ryan*

William Ryan
Postmaster
Concurring Official


Attachments:
ELM 436
SF8

Exhibit ___9___
Page ___8___ of ___8___